FERDINAND SUYDAM et al., Trustees, etc., Respondents, v. WILLIAM H. JACKSON, Appellant.

The provisions of the act in reference to the rights and liabilities of lessors and lessees (chap. 345, Laws of 1860), relieving a tenant from the payment of rent of a building which, without fault or negligence upon his part, shall have been destroyed or so injured by the elements or other cause as to be untenantable, have reference to a destruction or injury resulting from some sudden and unexpected action of the elements or other cause, and not to the gradual deterioration and decay produced by the ordinary action of the elements. It does not affect the common-law rule requiring the tenant to make ordinary repairs.

(Argued June 17, 1873; decided September term, 1873.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of plaintiffs entered on a verdict.

This action was brought to recover a quarter's rent alleged to be due under a lease of certain premises situate in the city of New York.

On the 30th of March, 1866, the plaintiffs leased to the defendant the store known as No. 48 Front street, in the city of New York, for the term of three years from the 1st day of May, 1866, at the yearly rental of $2,600, payable quarterly. The lease contained no covenant to repair on the part of the landlord, but that the Croton water and gas-pipes were to be kept in repair by the lessee. The demised premises consisted of a store five stories high, the main floor being about seventy feet long; in the rear of the first floor there

was an extension, about eight or nine feet in width, and extending no higher than the first story; the roof of the extension was of glass; it was occupied as an office. On the 1st day of May, 1868, the defendant left, at the plaintiffs' office, a notice that the premises were untenantable and unfit for occupancy, and that he surrendered possession of the same. The alleged untenantableness specified was that the roof, etc., had become "so injured, corroded and worn out by the action of the elements and by age, as to leak" in such a manner that the same were unfit for occupancy. In support of these allegations, the defendant's witnesses testified that after the tenants had been in possession nearly a year, the glass roof over the extension, in the rear of the first floor, began to leak in the beginning of 1867, when the snow broke up, about March of that year; that it began to leak a little at first, and afterward, during the ensuing summer and winter it leaked some, and leaked badly when it rained, rendering the office damp and admitting the water. That the glass roof of the extension was dilapidated and was decayed at the joining of the glass and the frame, and the crossing of the extension, where the leakage took place. Neither the defendant nor his sub-tenants repaired the glass roof when it began to leak from said decay, nor made any repairs. No proof was given as to any injury or damage to the premises during the term, except such as arose from natural decay, and no leakage, except that above noticed from the roof, over the extension in the rear.

At the conclusion of his evidence the court directed a verdict for the plaintiff; exceptions were ordered to be heard in the first instance at the General Term.

*Samuel Hand* for the appellant. Title to rent is founded on the presumption that the tenant can enjoy the demised premises during the term. (Pothier Cont. de Louage, pt. 3, ch. 1, *n.* 139; Dig. lib. 19, tit. 2, *b.* 15, § 2; Novel 14, cap. 1; Grotius, lib. 2, cap. 12, § 18; Civil Code La., Art. 2, 667; *Ripley* v. *Wrightman,* 4 McCord, 447; *Graves* v. *Berdan,*

26 N. Y., 100.) The covenants expressed clearly excluded any implied ones. (*Burr* v. *Stenton*, 43 N. Y., 462.)

*Edmund Wetmore* for the respondents. The common-law rule is that, upon a lease for years with a covenant to pay rent, the rent is payable at the end of the term, even if the premises are destroyed by unavoidable casualty. (*Walton* v. *Waterhouse* [note], 2 Saund., 422, marg. page; *Hallett* v. *Wylie*, 3 J. R., 44; *Belfour* v. *Weston*, 1 T. R., 310; 3 Kent's Com., 465, marg. page.) Chapter 345, Laws of 1860, was intended to provide for the destruction of the premises by accident or violence, which the tenant could not prevent, and not to relieve him from his neglect to make tenantable repairs. (*Bloomer* v. *Merrill*, 1 Daly 485; *Austin* v. *Field*, 7 Abb. [N. S.], 29; *Johnson* v. *Oppenheim*, 12 id., 449; *Murray* v. *Waller*, 42 How., 64; *Graves* v. *Berdan*, 26 N. Y., 498, 501; *Fash* v. *Kavanagh*, 24 How., 347.) In the absence of an express agreement, the landlord of demised premises is not bound to make repairs. (*Cleves* v. *Willoughby*, 7 Hill, 83; *Post* v. *Vetter*, 2 E. D. S., 248; *Mayer* v. *Moller*, 1 Hilt., 491; *Howard* v. *Doolittle*, 3 Duer, 464; *Walker* v. *Gilbert*, 2 Robt., 214; *Doupe* v. *Genin*, 37 How., 5; *O'Brien* v. *Capwell*, 59 Barb., 497.) Without an express covenant to that effect, it is the tenant's duty to make tenantable repairs; and if he omits to do so, he is liable for permissive waste. (Gibbons on Deil. and Nuis., chap. 2, p. 45, *et seq.*; Coke on Lit., 53 *a*; Comyn Dig., tit. "Waste D.," 2; 4 Kent's Com., 110, marg. page.) There being no proof that the attempted surrender was accepted, there is no question of waiver in the case. (*Townsend* v. *Albers*, 3 E. D. S., 560; 1 Daly, 485; 6 Wend., 569.) The covenant in the lease to surrender the premises, at the end of the term, in as good condition as reasonable wear will permit, "damages by the elements excepted," does not alter the obligations of the parties as to repairs. (*Warner* v. *Hitchings*, 5 Barb., 666; *Wiegall* v. *Waters*, 6 T. R., 488; 5 Robt., 521.) The covenant for

quiet enjoyment does not affect the question at issue. (*Howard* v. *Doolittle*, 3 Duer, 464.)

EARL, C. The sole defence to this action is based upon the statute (Laws of 1860, chap. 345) which provides "that the lessees or occupants of any building, which shall, without any fault or neglect on their part, be destroyed or be so injured by the elements or any other cause as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant; and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied."

The roof of the small extension, in the rear of the main building, became gradually out of repair so as to leak badly, and the sole question for us to determine is, whether the demised premises were thus "injured" within the meaning of the statute. The leaking was not caused by any sudden, unusual, or fortuitous circumstance, but seems to have been caused by gradual wear and decay. The courts below held that the case was not within the statute, and that the lessee remained liable for the rent.

To be able properly to understand this statute, it is well to see what the common law was before it was enacted, and to ascertain, if we can, the mischief it was intended to remedy. At common law the lessor was, without express covenant to that effect, under no obligation to repair, and if the demised premises became, during the term, wholly untenantable by destruction thereof by fire, flood, tempest or otherwise, the lessee still remained liable for the rent unless exempted from such liability by some express covenant in his lease. ( *Walton* v. *Waterhouse*, 3 Saund., 422; *Hallett* v. *Wylie*, 3 John., 44; *Graves* v. *Berdan*, 26 N. Y., 498; 3 Kent's Com., 465.) But the lessee was under an implied covenant, from his relation to his landlord, to make what are called "tenantable repairs." Comyn, in his work on Landlord and Tenant,

at page 188, states the implied covenant or obligation of a lessee growing out of the relation of landlord and tenant to be, " to treat the premises demised in such manner that no injury be done to the inheritance, but that the estate may revert to the lessor undeteriorated by the willful or negligent conduct of the lessee. He is bound, therefore, to keep the soil in a proper state of cultivation, to preserve the timber and to support and repair the buildings. These duties fall upon him without any express covenant on his part, and a breach of them will, in general, render him liable to be punished for waste." (To the same effect, see Taylor's Land. & Ten., 163, and 1 Wash. on Real Prop., 429.) The lessee was not bound to make substantial, lasting or general repairs, but only such ordinary repairs as were necessary to prevent waste and decay of the premises. If a window in a dwelling should blow in, the tenant could not permit it to remain out and the storms to beat in and greatly injure the premises without liability for permissive waste; and if a shingle or board on the roof should blow off or become out of repair, the tenant could not permit the water, in time of rain, to flood the premises, and thus injure them, without a similar liability. He being present, a slight effort and expense on his part could save a great loss; and hence the law justly casts the burden upon him. I am not aware that it was ever claimed that it was unjust that he should bear this burden, or that any complaint was ever made of the rule of law which cast it upon him. It cannot, therefore, be presumed that the statute of 1860 was passed to shift this burden from the lessee to the lessor.

But it was considered a hard rule that the tenant who had from ignorance or inadvertence failed to protect himself by covenants in his lease, should be obliged to pay rent in cases where, from fire, flood or other fortuitous causes, the premises were destroyed or so injured as to be untenantable, and I am of opinion that it was to change this rule and cast the misfortune upon the owner of the demised premises that the law was enacted. The statute provides for two alternatives

when the premises are "destroyed" or "injured." The first alternative, evidently, has reference to a sudden and total destruction by the elements, acting with unusual power, or by human agency. The latter has reference to a case of injury to the premises, short of a total destruction, occasioned in the same way. If the legislature had intended to provide that the tenant should cease to be liable for rent when the premises from any cause became so damaged or out of repair as to be untenantable, it would have been easy to have expressed the intent in apt and proper language. The terms "destroyed" and "injured" do not, to my mind, convey the idea of gradual deterioration from the ordinary action of the elements in producing decay, common to all human struc- · tures.

I am, therefore, of the opinion that the courts below did not err in the construction which they gave to this statute, and this conclusion is not without the support of learned judges. (*Bloomer* v. *Merrill*, 1 Daly, 485 ; *Austin* v. *Field*, 7 Abb. [N, S.], 291.)

The judgment must be affirmed, with costs. ·

REYNOLDS, C.   When the legislature attempts, by positive enactment, to remedy an evil that has apparently grown up with the common law, it may be fairly assumed that the evil to be cured is fully appreciated, and that by apt words the remedy is provided for, as it is, and should be, understood by the law-making power.   It is very clear to my mind that the provisions of the statute of 1860 (chap. 345) were intended to relieve a tenant from the payment of rent where the demised property was destroyed by fire, or from some other kindred cause, resulting from some sudden and unexpected action of the elements.   The rule of the common law had become very obstinate, that, in such calamities, the tenant must be the sufferer, unless in his lease he had provided against it, which was very seldom done, as the contingency was never at the time thought of by either party.   The courts, although feeling constrained to observe the rule, have

very frequently suggested its injustice, and it is not too much to say that such suggestions, coupled with the hardships oftentimes produced, resulted in the remedial statute of 1860. It was intended by this act to relieve the tenant from the damaging effect of extraordinary disasters not anticipated by either party when the demise was made.

The statute of 1860 never was intended to have any effect upon the rule of the common law requiring the tenant to make ordinary repairs. In that rule there never was any hardship, and there was no occasion for special legislation in regard to it. The results of ordinary decay, or as it is sometimes said "wear and tear," would ordinarily be visible only to a tenant. The landlord having parted with his estate for a year or term of years, had no right to enter upon his property without the permission of his tenant, unless upon some default of the latter he entered under the authority of law.

In construing a statute which operates to change a principle of the common law, we are to be guided by rules of construction that have been long approved, and the most prominent of which, on the subject of statutes altering the common law, is that adopted by Chief Justice Trevor in the case of *Arthur* v. *Bohenham* in the reign of Queen Anne (11 Modern, 149, 161), which, in some form, has been repeated in the most reliable digests, and supported by many prior and subsequent adjudications in the courts. He said that " the general rule in the exposition of all acts of parliament is that, in all doubtful matters, and where the expression is in general terms, they are to receive such a construction as may be agreeable to the common law in cases of that nature, for statutes are not presumed to make any alteration in the common law, further or otherwise than the statute does expressly declare ; therefore, in all general matters the law does not presume the act did intend to make any alteration, for if the parliament had had that design they would have expressed it in the act." (See also Dwarris on Statutes, 564 ; Potter's Dwarris on Statutes and Constitutions, 184, 185,

186.)   Applying this rule to the present case, it seems to me entirely clear that the statute of 1860 does not change or impair the obligation of a tenant to make ordinary repairs, unless he is relieved from that duty by some provision in his lease.

It was urged on the part of the defendant that he was under no obligation to repair the roof of the building, so as to stop the leakage complained of, because, by reason of some express convenants in the lease relating to specified repairs to be made by the tenant, no further obligation on his part, tending in that direction, could be implied.   It is, perhaps, sufficient to say, in answer to this objection, that no such question appears to have been raised on the trial.   But I find no express covenants in the lease relating to the subject of repairs, except as to the "Croton water and gas-pipes and fixtures," and that the defendant should conform to the corporation ordinances in relation to the closing of hatchways and guards thereof, and keep the guards in repair, and pay all fines imposed for any violation of the ordinance in respect thereto.   These are not in any sense ordinary repairs, within the meaning of the common-law rule.   They are extraordinary and exceptional, and, unless specially provided for in the lease, the defendant would not have incurred the obligation, and they afford no support to the point taken.

It is finally said that the case ought to have been submitted to the jury, but upon what question the case does not disclose.   There was no conflict of evidence or dispute of facts. The dispute arose about the obligation to make, what seems very clearly to have been, a mere ordinary repair, and, as we think the duty was upon the defendant, the judgment must be affirmed, with costs.

All concur.

Judgment affirmed.