Dickman, J.
If the demised premises had been destroyed during the term of the lease, the lessee — the Gas Coal Company — would doubtless have been discharged from the payment of rent. It was one of the covenants in the lease itself, that it should become void and determine, and all rent thereon should cease, in the event of a destruction of the premises. And independently of the written contract between the parties, as only two rooms in the building passed to the lessee, and no interest in the land, the subject of the demise would have been extinguished by the destruction of the building, and the liability to pay rent would thereby have terminated. There would have remained nothing upon which the demise could operate. Winton v. Cornish, 5 Ohio, 477; Womak v. McQuarry, 28 Ind., 103; Kerr v. Merchant's Exchange Co., 3 Ed. Ch., 315; Graves v. Berdan, 26 N. Y., 498.
In the ease at bar, although the demised premises were not destroyed, it is contended, that they were so injured as to become unfit for occupancy, and that therefore there was no longer any obligation to pay rent to the lessors. There was no covenant by the lessors to repair, but the lessee covenanted to keep the premises in good and constant repair at its own expense, and at the expiration of the term, to surrender them to the lessors in as good condition as the same were at the commencement of the lease, the natural decay and wear and loss by fire, only excepted. It is to be presumed that the parties made their contract in contemplation of the ordinary action of the elements, and of the situation and condition of the demised premises as patent to the ordinary observer. It would naturally be expected, that a building might be erected at any time upon the adjoining vacant lot, fronting on a prominent business *667 street, and thus cut off light and ventilation from that side. But obvious as the contingency was, the lessee did not see fit to make provision for an abatement of rent or termination of the lease, in case the owner of the vacant lot should construct a building thereon. The exclusion of light and air must have been foreseen as not improbable, and the lessee covenanted to pay rent, in full view of the existing and prospective state of things. Having thus covenanted to pay rent, except only in the event of the destruction of the premises, the lessee was bound by its agreement, notwithstanding the subsequent change in the condition of the leased premises by the erection of the adjoining building. Linn v. Ross, 10 Ohio, 412. It was well said by the court in Brown v. Curran, 53 How. Pr., 303, “Building is not necessarily a cause of damage to an adjoining owner. And tenants themselves should take notice and be prepared for such contingencies of constant occurrence, and make their arrangements accordingly.”
■ If the lessors had conveyed 'to the lessee a right to the unobstructed enjoyment of light and air over the vacant lot, for and during its term, they would have been answerable for that right in case of disturbance. But there was no such grant. And the vacant lot not belonging to the lessors at the time of leasing, it cannot be urged with any force of reason, that an easement by implication in the passage of light and air followed a demise of the premises to the lessee. It is true, as said by Judge Story in U. S. v. Appleton, 1 Sumner, 492, that “the general rule of law is, that when a house or store is conveyed by the owner thereof, everything then belonging to, and in use for, the house or store, as an incident or appurtenance, passes by the grant.” But, it was never incident or appurtenant to the lessors’ building, that the adjoining lot should always remain vacant, for the purpose of furnishing light and ventilation to the lessors’ tenants.
There is no evidence that the lessors, at the time of the demise, had any more knowledge than the lessee, of the intention of the owner of the adjoining land, to put a build *668 ing thereon. It is not claimed that there was ever any act amounting to an eviction on the part of the lessors; nor are they chargeable with any wrongful act which precluded the tenant from the beneficial enjoyment of the leasehold. As a matter of fact, the leased apartments, instead of being rendered permanently unfit for occupancy by the proximity of the walls of the adjoining building, were made tenant-able by repairs, and were occupied by other tenants after their abandonment by the lessee.
Among numerous adjudged cases in the same class with the ease at bar, it was held in Johnson v. Oppenheim, 55 N. Y., 280, that the mere building upon or other improvement of the adjoining lot, by which the demised premises were rendered less commodious of occupation or less suitable to the uses of the tenant, did not affect the right of the landlord to his rent, or authorize the tenant to terminate the lease and abandon the premises. And in Hazlett v. Powell, 30 Pa. St., 293, it was held, that where a lessor demised a building in which were sundry windows opening on the ground of an adjoining owner, the erection of a party wall by such adjoining owner by which the windows were closed up, is not an eviction by the lessor, nor any defense to the payment of the accruing rent. See also Palmer v. Wetmore, 2 Sandf., 316 ; Myers v. Gemmel, 10 Barb., 537.
It is contended, however, in behalf of the defendant in error, that the lessee was released from liability to pay rent, and was authorized to surrender the possession of the premises, by virtue of the act of March 30,1868 (65 Ohio Laws, 35). That act, which is the same as section 4113 of the Revised Statutes, reads as follows :
“ That the lessee of any building which shall, without any fault or neglect on his part, be destroyed, or be so injured by the elements, or other eause, as to be unfit for occupancy, shall not be liable to pay rent to the lessor or owner thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessee shall thereupon surrender possession of the premises so-leased.” The act is substantially a transcript *669 of the New York statute in pari materia, and the adjudged cases in that state serve as reliable aids in its interpretation. Without determining whether the Gas Coal Company, as lessee of only two rooms instead of the entire building, would come within the classification of persons entitled to the benefit of the statute, we are of opinion, that the lessee ■was not injured to the extent, nor was its injury of the kind contemplated by the statute. The evident design of the act was, to relieve the ignorant and inadvertent who might fail to protect themselves by special provision in their lease, against the evil and mischief of the common law, which held the tenant liable for rent although the demised premises were destroyed by fire, flood, tempest or otherwise, unless he was exempt from liability by some express covenant in his lease. The destruction or injury within the purview of the statute, is not that gradual decay which results from the ordinary action of the elements nor injury resulting from the ordinary action of human agencies, which a lessee is supposed to have in view when he enters into his contract. The statute is designed rather to protect the lessee against an unexpected and unusual action of the elements or of human forces, causing a total destruction of the demised premises or an injury thereto only short of a total destruction, which the parties ignorantly or inadvertently failed to anticipate and provide against when the demise was made. In construing the New York statute, the court, in Suydam v. Jackson, 54 N. Y., 450, say, “ The statute provides for two alternatives, when the premises are ‘destroyed’ or‘injured.’ The first alternative, evidently, has reference to a sudden and total destruction by the elements, acting with unusual power, or by human agency. The latter has reference to a case of injury to the premises, short of a total destruction, occasioned in the same way. If the legislature had intended to provide that the tenant should cease to be liable for rent when the premises from any cause became so damaged or out of repair as to be untenantable, it would have been easy to have expressed the intent in apt and proper language.” The alleged dam *670 age to the apartments leased to the defendant1 in error, was such as might have been expected to result naturally and ordinarily from the construction of the building upon the adjoining vacant lot. And the structure itself must have been anticipated as one of the probabilities of the future. Its walls necessarily excluded light and air, and caused more or less dampness in the lessee’s apartments, but the consequential damage was not the same as that contemplated by the statute under consideration.
The judgment of the district court we think should be reversed, and that of the court of common pleas affirmed.

Judgment accordingly.