Per Curiam.
The lease under which the defendant held the premises, by its terms, expired on the first of May, 1885. She abandoned them on the 10th of February, 1885.
The landlord brought his action for rent, and the tenant interposed a general denial, and also claimed an eviction. The production of the lease effectually disposed of the general denial, and no question can arise on that.
To support the claim of eviction, the defendant testified .that she left because the inspector of the building department pronounced the building unsafe; and because, as she testified, “ noises were heard through the house, shaking us fearfully, when we left the dinner table and ran out into the halt; we heard the noise, and a fearful shock just like an earthquake, same effect as an earthquake, violent vibration;” and that this continued at intervals for five or six weeks, sometimes two or three times a day, then four or •five days would pass without hearing them.
Mr. Irwin, the son of the defendant, said there “was a sort of explosion, and the house would shake two or three .times a day sometimes; and there would be a lapse of three ,or four days without snaking.” Mr. Ver dual testified that he visited his sister-in-law (the defendant) frequently; that he heard the noise only once, and it sounded like “a sharp -explosion, sharp noise, violently coming from a fireplace or chimney; a reasonably loud noise; I suppose about as loud .as the discharge of a pistol.”
All these witnesses testified there were cracks in the walls or partitions, but none of them swore that there were any cracks in the supporting walls of the building; whilst plaintiff’s testimony is that it was perfectly safe. The defendant did not inform the plaintiff of these noises until shortly before she vacated the premises; and she says he, at first, attributed them to the pipes, but afterwards he thought it was a servant in the house putting dynamite down the chimneys; and her son says that the plaintiff told him about the same thing, adding that his janitor had left ■on bad terms, and that he thought the janitor was conspiring with his servants and giving them dynamite. The testimony also shows that this son procured the first inspection of the building, by going to the building department and making complaint there. It also appears from the evidence that the first report was not made to the building department until a week after defendant aban *272 doned the premises. When Mr. D’Oench made the second, inspection, on the 6th of March, the building was “sound and safe,” although the testimony is clear that, in the meantime, no repairs had been made.
There are but two grounds on which the defendant can succeed in her defense. First, on the ground of an eviction at common law; or second, by reason of the provisions of chapter 345, Laws of 1860. The facts in the case do not. amount to eviction at common law; and this was conceded by defendant’s counsel on the argument. But he strongly insisted that they warranted the defendant in surrendering the premises under the act of 1860. This act provides that-where premises shall “be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy,” the lessee “shall not be liable or bound to pay rent to the lessor, * * * and the lessees or occupants may thereupon quit and surrender possession,” etc. It will be perceived that two contingencies, only are provided for by this act One the destruction of the premises; the other, such an injury to the premises by the elements, or other cause, as to render them untenantable and unfit for occupancy. Suydam v. Jackson, 54 N. Y., 454. In all other respects the law of landlord and tenant remains as it was before.
It is manifest the first contingency did not arise. We think, it is just as clear, the second did not occur. Mr. D’Oench says that when he examined the premises, about three-weeks after the defendant moved out, and before any repairs had been made, the premises were “sound and safe ; and in this, he is corroborated by Mr. Dudley, the former superintendent of buildings. So when the defendant moved out, the premises had not been injured by the elements or any other cause, so as to be untenantable and unfit for occupancy, within the meaning of the act of 1860.
But it is claimed that the landlord, when endeavoring to account for the noises, said first that they arose from the-pipes, and afterwards that he supposed some one at enmity with him was putting dynamite down the chimneys tp get his tenants out. Both these statements were mere surmises- and their probability could as well be determined by the tenant as the landlord, and defendant’s son said he did not. believe the latter theory, at the time.
Taking the dynamite theory in its broadest extent, and assuming that the defendant fully believed it, even then, the case is not brought within either of the contingencies provided for by the act of 1860. Her fears alone would neither destroy nor injure the building in any way, and it is only on condition that the building is actually destroyed *273 or injured, so as to make it unfit for occupancy, that the-lessee is released from the obligation of the lease.
The judgment of the district court must therefore be affirmed, with costs.