JACOB B. TALLMAN, Appellant, *v.* JOHN H. MURPHY, Respondent.

Defendant rented an apartment in plaintiff's apartment-house in the city of New York, and went into occupation in October, 1884. The owner retained control over everything common to the whole building, of which each tenant had the use or beneficial enjoyment, *i. e.*, hall-ways, heating apparatus, etc. In an action to recover rent it appeared that in January, 1885, there was an odor of coal gas in defendant's rooms so strong that it compelled the opening of the windows and made him and his wife sick. The landlord's attention was called to it; he promised to remedy it, but did not, and it continued until defendant abandoned the premises on February twenty-eight. There was also smoke in the parlor, severe for a few days, which continued in a less degree while defendant occupied. The proof tended to show the gas and smoke came through the flues from rooms occupied by other tenants. There were also loud explosions heard throughout the building, of fre-quent occurrence day and night, which caused the building to tremble and shake, throwing articles from the mantels and shelves and making large cracks in the walls. On the night before defendant left a loud explosion occurred, which so frightened them that they gave up posses-sion. The evidence tended to show these noises came from a large water-tank on the roof. In February the building was examined by the board of inspection of buildings, and pronounced dangerous and unsafe. The court submitted the case to the jury, instructing them that defendant's evidence was sufficient, if believed by them, to sustain his claim of eviction and to justify an abandonment of the premises under the act of 1860 (Chap. 345, Laws of 1860), which authorizes the lessee of a building

which shall, without fault or negligence on his part, " be so injured by the elements or any other cause as to be untenantable," to quit and surrender possession, and discharges him from liability for rent. *Held* (VANN, PARKER and POTTER, JJ., dissenting), no error.

*It seems,* that such injuries as are the result of a failure to make ordinary repairs, which a landlord has not agreed to make, do not come within the statute.

*Suydam* v. *Jackson* (54 N. Y. 450), distinguished.

To constitute an eviction it is not requisite that there should be actual expulsion of the tenant from the premises; it is sufficient if the landlord commits or suffers acts to be committed which make it necessary for the tenant to remove.

So, also, the failure of the landlord to perform the duty he owes his tenant, without performance of which the leasehold premises are not tenantable, constitutes an eviction.

*Gilhooley* v. *Washington* (4 N. Y. 217), distinguished.

(Argued March 12, 1890 ; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 1, 1887, which affirmed a judgment in favor of defendant entered upon a verdict.

This action was to recover three months' rent for apartments in a building No. 29 West Fifty-seventh street, in New York city, known as " The Soncey."

The defense was first, an eviction ; second, that the building was so injured as to be untenantable and unfit for occupancy, and that the defendant, therefore, quit and surrendered the demised premises pursuant to chapter 345, Laws of 1860.

There was a verdict for the defendant at the circuit which was affirmed by the General Term.

Further facts appear in the opinion.

*James M. Smith* for appellant.   In order to create an eviction, the acts complained of must be the acts of the landlord, or they must be done by his consent, permission or connivance. If done by third parties, or parties not acting in his behalf, whether tenants or others, the landlord is not responsible. (*Gilhooley* v. *Washington,* 4 N. Y. 217.)   The provisions of chapter 345 of the Laws of 1860, do not release the defendant

from his covenant to pay rent for the entire term. (*Suydam v. Jackson*, 54 N. Y. 454.) It was error in the court not to have directed judgment for the plaintiff on the pleadings. (*Suydam* v. *Jackson*, 54 N. Y. 453 ; *People* v. *Sharp*, 107 id. 427 ; *In re McGraw*, 111 id. 98.)

*Theo. F. Sanxay* for respondent. The gas, smoke and explosions were not from any fault of defendant, were matters for which the landlord was responsible, they interfered with the beneficial enjoyment of the premises by the defendant, and the omission of the plaintiff to correct them, or any of them, amounted, upon the abandonment of the premises by defendant because of them, to a constructive eviction. (McAdam on Landl. & Ten. 478, 480 ; *Dyett* v. *Pendleton*, 8 Cow. 728 ; *Edgerton* v. *Page*, 20 N. Y. 283 ; *Cohen* v. *Dupont*, 1 Sandf. 264 ; *Bradley* v. *DeGoicouria*, 14 Abb. [N. C.] 53 ; *Lawrence* v. *Burrell*, 3 How. Pr. [N. S.] 126 ; *W. S. Bank* v. *Newton*, 76 N. Y. 616 ; *Christopher* v. *Austen*, 11 id. 216.) The building became untenantable and unfit for occupancy within the statute of 1860. (7 Abb. Dig. 621 ; *Kip* v. *Merwin*, 52 N. Y. 542 ; *Frank* v. *Youman*, 17 Wkly. Dig. 252 ; *Fish* v. *Cavenagh*, 24 How. Pr. 349, 350 ; *Vann* v. *Rouse*, 94 N. Y. 404, 405, 406.)

BROWN, J. When the defendant rested his case and again at the close of the testimony there was a motion that the court direct a verdict for the plaintiff, which was denied and an exception taken by the plaintiff.

The court instructed the jury that the evidence on the part of defendant was sufficient, if believed by them, to sustain the claim of eviction, and that it would also justify a finding that the defendant was warranted in abandoning the premises under the statute of 1860 (Chap. 345), and in such case he would not be liable for the rent.

The facts of the case which the jury may be assumed to have found were as follows : The building in which the defendant was a tenant was a large apartment-house, so

arranged that several rooms on one floor should constitute an apartment, and intended to furnish therein complete arrangements for the occupation of one family. The owner retained charge of, and control over everything that was common to the whole building, and of which each tenant had the use or beneficial enjoyment, such as the hallways, heating apparatus, water supply, elevators, etc. The defendant occupied the first apartment above the basement on the east side of the house. He entered into occupation October 22, 1884, and finally abandoned the premises on February 28, 1885.

In January, 1885, there was a strong odor of coal gas in his rooms which continued more or less until he left the building. It compelled the opening of the windows, and made defendant and his wife sick. The landlord's attention was directed to it, and he promised to remedy it, but never did so.

There was also smoke in the parlor, which was quite severe for a few days, and continued in a less degree, while defendant occupied the apartment.

The proof tended so show that the gas and smoke came through the flues from rooms occupied by other tenants. Plaintiff promised to remedy it, but did not do so.

There were loud explosions heard throughout the building. These were of frequent occurrence during the day-time and night. They were described, by witnesses, as resembling the discharge of a gun, and the boom of a cannon. One witness, who had lived in California, and experienced several shocks of earthquake, likened the noise and vibration to that of an earthquake. They caused the building to tremble and shake. Furniture was moved. Vases, and other ornaments were thrown from the mantles and shelves, and broken. Clocks stopped, and large cracks were made in the walls and ceiling. The landlord expressed to plaintiff and his wife the belief that a discharged employe had exploded dynamite in the pipes and flues of the house, for the purpose of injuring the building. Defendant and his wife were severely frightened by these explosions, and were under a well-founded apprehension that

there was danger in remaining in the building.  On the fifteenth
of February, they moved away.  They returned on the twenty-
eighth of February, but soon after retiring at night, a loud
explosion occurred, which so frightened them that they arose
and dressed, and did not again retire, and on the following
day they gave up the possession of the premises.  The cause
of this unprecedented condition of affairs had not been dis-
covered at the time of the defendant's leaving.  The plaintiff
had employed detectives, and endeavored to solve the mystery
but had failed.

Upon the trial, there was evidence that the noise proceeded
from a large water tank on the roof, and was caused by the
action of the water upon sheet-iron partitions in said tank, in
connection with the use of the water in running the elevator.

During the month of February, the building was examined
by examiners of the board of inspection of buildings, and
pronounced unsafe and dangerous.  The rear wall was settled
and cracked, and window sills and lintels broken.

We are of the opinion that the case was one for the con-
sideration of the jury.

The statute of 1860 referred to provides that a lessee of a
building which shall, without fault or neglect on his part,
"be so injured by the elements or any other cause as to be
untenantable and unfit for occupany shall not be liable to pay
rent to the lessor, and may thereupon quit and surrender
possession of the premises."

The statute contemplates an injury to the building which
substantially affects the enjoyment of it by the tenant.  The
evidence permitted such a conclusion by the jury in this case.

The defendant testified :  " These explosions were cracking
the walls and ceiling in the apartment.  Those cracks were
increasing all the time, growing larger and larger.  One was
large enough to put in my two fingers."  Another witness,
an occupant of another apartment, testified :  " These shocks
and vibrations cracked the walls.  There was paper on my
apartment, and these cracks showed through the paper.
Some of these cracks were as much as fifteen or twenty feet

long. In some places I could place my hand in the crack, the width of two fingers. As those explosions were repeated they would increase or grow wider." These explosions occurred throughout the month of February. On the tenth and seventeenth of that month the building was examined by the inspector of buildings of the city and declared to be unsafe and dangerous. The rear wall was settled and cracked.

The only explanation given by the landlord was that he believed that dynamite had been exploded somewhere in the building. Under these circumstances we think that the jury were justified in finding that there was an "injury" to the building and that it was "untenantable and unfit for occupancy." It will be observed that the statute does not require that the building should be unsafe or dangerous, but that it should be "unfit for occupancy" as a result of injury. It puts upon the landlord the risk of having the premises unfit for occupation. (*Vann* v. *Rouse*, 94 N. Y. 401.)

Such injuries as are the result of failure to make ordinary repairs, when the landlord has not agreed to make them, do not come within the statute, because it was not intended to modify or change the relative duties of the parties to the lease in that respect.

That is all that was necessarily decided in *Suydam* v. *Jackson* (54 N. Y. 450).

There the condition of the building was the result of a failure to make ordinary repairs, and the landlord had not agreed to make them. Here the evidence tended to show, substantial injury to the building, not resulting from any fault or neglect of the tenant, and which justified the fear on his part that it was dangerous longer to remain an occupant of his apartments.

We are of the opinion that the trial court did not err in submitting this branch of the case to the jury.

A building shaken by repeated explosions which caused the walls and ceiling to crack, the plaster to fall, clocks to stop and ornaments to be broken, and which was declared by the officer of the bureau of inspection of buildings to be "unsafe

and dangerous," and the rooms of which were, at times, filled with smoke and coal gas to an extent sufficient to make the inmates sick, could hardly be called "tenantable or fit for occupancy" within the fair meaning of that term applied to a building of the character and purposes of the one in question.

Assuming, however, that the jury might have believed that the injuries to the building were exaggerated by the defendant and his witnesses, and that a case did not exist which justified the surrender of the possession of the property under the statute cited, still we are of the opinion that the evidence was such that the jury might have found an eviction.

"An eviction is defined to be when there has been an obstruction to the beneficial enjoyment of the premises and a diminution of the consideration of the contract by the act of the landlord." (McAdam on Landl. & Ten. 478, 479.)

It is not necessary that there should be actual expulsion of the tenant from the premises. If the landlord commits or suffers acts to be committed which make it necessary for the tenant to remove, this is equivalent to expulsion. (*Dyett* v. *Pendleton*, 8 Cow. 728; *Edgerton* v. *Page*, 20 N. Y. 283; *Cohen* v. *Dupont*, 1 Sandf. 260.)

The first case cited established the law in this state that if the landlord creates a nuisance in the vicinity of the demised premises or commits acts which deprive the tenant of the beneficial enjoyment of the property, in consequence of which the tenant abandons the possession before rent is due, the lessor's action for rent is barred. The consideration of the agreement to pay rent in such cases fails. "If the tenant be deprived of the thing letten the obligation to pay the rent ceases, because such obligation has its force only from the consideration which was enjoyment of the thing demised." (Per SPENCER, Senator, in *Dyett* v. *Pend eton*, *supra*.)

*Gilhooley* v. *Washington* (4 N. Y. 217), cited by the appellant, is not in conflict with these authorities. In that case it was not shown that the plaintiff had any connection with the nuisance which induced the defendant to quit the premises.

It is not essential that the acts of the landlord should be

committed with intent to compel the tenant to leave the property or to deprive him of the beneficial enjoyment thereof. If they are calculated to and do make it necessary for the tenant to move they constitute an eviction. So a failure to perform the duty which the landlord owes to the tenant, and without the due performance of which the leasehold premises are not tenantable, would constitute an eviction.

In such a building as the one under consideration there is very much that remains under the charge and control of the landlord. The heating of the apartments, the supply of water, all sanitary arrangements and many other things essential to the proper enjoyment of the apartments in the building by the tenants thereof, are regulated and controlled by the landlord, and he owes a duty to the tenant to see that all such matters and appliances are kept in proper order, and if he persistently neglects them, and, by reason of such neglect, the tenant is deprived of heat or water, or his apartments are filled with gas or foul odors from the same, and the apartments become unfit for occupancy, the tenant is deprived of the beneficial enjoyment thereof, and the consideration for which he agrees to pay rent fails and there is a constructive eviction.

In *Thomas* v. *Nelson* (69 N. Y. 118–121), EARL, J., said : " There was a defective flue which made the occupancy of the premises extremely uncomfortable and inconvenient, and the defendant would probably, on this account, have been justified in abandoning them as untenantable." The defendant was, however, in that case, denied that right, as the jury found before he left the premises he had agreed, with the plaintiff, to repair the flue at the expense of the latter. (See also *Alger* v. *Kennedy*, 49 Vt. 109 ; *Thalheimer* v. *Lempert*, 17 N. Y. S. R. 346.)

So, if the explosions proceeded from the water-tank and were of the character sworn to by defendant's witnesses, and produced the result stated, it was clearly a nuisance, and it was the defendant's duty to abate it and remove the cause of the trouble. The tank was a part of the building, designed and intended in its use for the accommodation of the tenants.

If the noises and explosions proceeded from it, the nuisance was of plaintiff's own creation.

There was ample testimony to sustain the finding that the explosion, coal gas and smoke proceeded from causes entirely under the control of the landlord and which he failed to remedy.

If the jury believed the defendant's witnesses, and we must assume they did, the evidence fully justified the defendant in the surrender of the property.

We have examined the numerous exceptions taken during the trial and find none that would warrant a reversal of the judgment.

The judgment must be affirmed.

Vann, J. (dissenting). I cannot concur in the judgment about to be pronounced by the court.

The defendant claims that he was relieved of the obligation to pay rent: 1. By constructive eviction from the premises; and, 2. By the act in relation to the rights and liabilities of owners and lessors and of lessees and occupants of buildings. (Laws of 1860, chap. 345.) The lease in question is for the term of one year from October 22, 1884. The defendant had occupied the same premises during the year immediately preceding, and it does not appear from the evidence that there was any change in their condition, during the second term, for which the landlord was responsible. There was no covenant to repair on his part, or to furnish water, heat, light or any other convenience for the use of the tenant. The premises are described simply as "the first apartment in the Soncey East Side, known as No. 49 West Fifty-seventh street." Nothing else was covered by the lease, and aside from this there is no suggestion therein that the property let was a portion of an apartment-house. The plaintiff did not personally occupy any part of the building, except an office in the basement, but there were ten or eleven tenants besides the defendant.

The facts relied upon to constitute an eviction are: 1. That from the middle of January until the 1st of February, 1885,

the defendant was annoyed by coal gas in his bed-room that came from an upper apartment, and was caused by the burning of cannel coal by the tenants thereof. 2. During the same period he was annoyed by smoke in the front parlor, that was apparently caused by the occupant of an apartment underneath. 3. About the first of February certain noises, called by the witnesses "explosions," were heard, accompanied by the jarring of the building, cracking of the ceilings and walls, and other features that were both annoying and alarming. The smoke and gas, so far as they were substantial evils, were temporary, but the noises continued until the twenty-eighth of February, when the defendant moved out, and he did not again occupy the premises during the remainder of his term. The plaintiff was not shown to be responsible for any of these results, unless responsibility can be founded upon the bare fact that he owned the building. This is not enough, in the absence of any covenant whatever on his part, because the tenant took the premises as they were, and a rule in the nature of *caveat emptor* applies. (*Franklin* v. *Brown*, 118 N. Y. 110.)

The lessee of real property runs the risk of its condition, unless he has an express agreement from the lessor in relation to the subject. There is no implied covenant that it is or that it will continue to be fit for occupancy. (*Franklin* v. *Brown*, *supra*.) If, after the execution of the lease, a sudden and serious physical injury happen to the building, the statute of 1860 may afford relief, but not upon the ground of eviction. The law does not require a landlord to prevent his tenants from annoying each other or from trespassing upon each others rights, but it leaves them to seek redress for injuries of that character from those who directly inflict them.

I think that there was no eviction, either actual or constructive, because there was neither wrongful act nor omission of duty on the part of the landlord. Where a lessor expels his lessee from the premises or compels him to leave by causing or maintaining a nuisance thereon, he can collect no rent after the tenant leaves, because one who deprives another of the consideration on which his obligation was founded can recover

no damages for its non-fulfillment. (*Dyett* v. *Pendleton*, 8 Cow.
727.)   But a nuisance that is neither created nor connived at
by the landlord, and which, so far as appears, he was unable
to prevent, will not justify the claim of eviction, as that term
is understood in the law.   (*Gilhooley* v. *Washington*, 4 N. Y.
217 ; *Franklin* v. *Brown, supra.*)

The statute of 1860 (Chap. 345), was passed to relieve a
tenant from the harsh rule of the common law, which required
him to pay rent, even after the demised premises had been
totally destroyed without negligence or fault on his part.   It
provides for two contingencies, when the building has been
either "destroyed" or "injured," and this court has held that the
former alternative " has reference to a sudden and total destruc-
tion by the elements, acting with unusual power, or by human
agency," and the latter " to a case of injury to the premises,
short of a total destruction, occasioned in the same way."
(*Suydam* v. *Jackson*, 54 N. Y. 450, 455.) This statute was not
designed to relieve tenants from all evil results that might
flow from their omission to require appropriate covenants in
their leases, but simply from such a substantial injury to the
premises as rendered them untenantable or uninhabitable.
There was no proof in this case ·of injury by the elements, nor
enough evidence of injury by human agency to support a
finding to that effect.   There was no evidence of injury to the
building from any cause, except that certain cracks appeared
in the walls, mantels, etc., that were claimed to render it
unsafe.   Some of these cracks were there during the first term
of the defendant.   The main cause of complaint, however,
was apprehended, not actual danger.   The inconvenience was
undoubtedly serious, but " untenantable " requires more than
that to satisfy its meaning.   Can a building that is actually
occupied, as this continued to be after the defendant had
removed therefrom, by ten different families, be termed unten-
antable within the meaning of the statute ?   It was, in fact,
tenanted, or held in actual occupation, by many human beings,
without injury during the whole of defendant's term.   The
legislature required that it should not only be untenantable,

but also unfit for occupancy, owing to destruction or injury, before exemption from liability to pay rent could be successfully claimed. The noises were not caused by any sudden injury to the premises, but were the result of a defect that existed when the lease was signed. None of the injuries to the building were shown to be sufficient to render it untenantable and unfit for occupancy, unless the cracks made it unsafe. Some evidence was received upon this subject, the admissibility of which is questioned by the appellant. When the defendant was upon the stand, after testifying as to the gas, smoke, cracks and "explosions," he was asked this question : "Did you consider, from all these manifestations that you saw, that the building was really dangerous?" The plaintiff objected to the question as incompetent and immaterial, but the objection was overruled. Exception was taken, and the witness answered that he did. Even if the tenant honestly considered the building unsafe, he had no right to leave it and claim exemption from the further payment of rent, unless it was in fact unsafe. His opinion upon the main question of fact was incompetent, and tended to mislead the jury.

Notwithstanding the admission of this evidence the plaintiff was not permitted to show by a competent architect " the manner in which the building was constructed as to its durability," or that it " was done according to the most approved plan and with the best materials," upon the ground that it was irrelevant. I think, however, that it was material upon the issue as to the safety of the building. The defendant had shown the existence of cracks, had expressed his opinion that the building was dangerous and had supplemented it by the report of the examiner, giving his opinion. The plan of construction, the method of executing it and the materials used in so doing, had a bearing upon the effect of the cracks and the question of safety. A solid, well-planned building, perfectly constructed from the best materials, would be less affected by cracks than one poorly built out of poor materials and upon a poor plan. This ruling is especially significant in view of the fact that the evidence, some of it given by the defendant's

witnesses, strongly tended to show that the cracks were simply the result of shrinkage of the timbers caused by the use of steam heat in a new building.

The trial court declined to charge upon the request of the plaintiff that "if the premises became untenantable from causes other than those specified in chapter 345, Laws of 1860, without the fault of the landlord, the tenant is not relieved from the payment of the rent." The learned judge, in reply to the request, said : "I cannot so charge, and I decline to so charge," without giving any reason for refusing, and without declining to charge further than he had charged upon the subject. He had previously charged, in substance, that the evidence in relation to the smoke and gas was sufficient to sustain the claim of eviction, if believed by the jury. Both the charge and the refusal to charge are in conflict with what has already been said upon the subject of eviction.

For these reasons I think that the judgment should be reversed and a new trial granted, with costs to abide event.

FOLLETT, Ch. J., BRADLEY and HAIGHT, JJ., concur with BROWN, J.; PARKER and POTTER, JJ., concur with VANN, J., dissenting.

Judgment affirmed.