EVELINA A. MESEROLE, Appellant, *v.* WILLIAM E. SINN, as Executor, etc., of WALTER L. SINN, Deceased, Respondent.

*Landlord and tenant — when premises may be given up by the tenant because of their being flooded as a result of gradual deterioration — proximate cause.*

A tenant of premises, which at the time of the lease were in such a state that by gradual deterioration they fell into a condition such that heavy rain soaked into or ran into and flooded the cellar so as to render the premises untenantable, may quit and surrender the possession of the same under the provisions of section 197 of chapter 547 of the Laws of 1896 (The Real Property Law), and escape further payment of rent therefor.

In such a case water, one of the elements, will be deemed to have been the proximate cause of the injury.

APPEAL by the plaintiff, Evelina A. Meserole, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 16th day of March, 1898, upon the verdict of a jury, and also from an order entered in said clerk's office denying the plaintiff's motion for a new trial made upon the minutes.

The action was brought to recover rent.

*Michael Fennelly*, for the appellant.

*James Troy* [*Thomas H. Troy* with him on the brief], for the respondent.

GOODRICH, P. J.:

On November 27, 1894, the plaintiff by written lease demised to Walter L. Sinn the premises known as No. 404 Fourth street,

Brooklyn, for a term of eighteen months. Mr. Sinn entered into the premises and occupied them until October 24, 1895, when he vacated and surrendered them on the ground that they had become and were so injured by the elements and other causes as to be absolutely untenantable and unfit for occupancy.

The evidence shows, and the plaintiff's counsel in his brief concedes, that after heavy rainstorms water flowed into the cellar so that it had to be bailed out on each of such occasions. There was evidence tending to show that, after heavy rainstorms, water entered the cellar through the walls and foundations to the depth of several inches; that the foundations were always damp, and that when the house was closed at night it became damp and close; that the same result followed from melting snow; that the tenant became sick and died subsequently to his removal from the house, and that his children also became sick with malaria. There was medical and other evidence tending to show that the house was not a safe one to live in, and perhaps this might be assumed judicially.

The court fairly submitted to the jury the condition of the premises at the time of the surrender, saying: " The only question that you have to pass upon is whether this place, from the element of water, got in such a condition, gradually or all at once, that it was untenantable and unfit for occupation." We must assume, therefore, that a verdict for the defendant established as a fact that the premises became so injured by water as to be untenantable and unfit for occupancy. The verdict having established this fact, the next question was whether they became so without any fault or negligence of the tenant. That question also was submitted to the jury when the court instructed them specifically that if the defect " came from the neglect of the tenant in not attending to the premises and not remedying it; that is to say, if he could do so, and if it was a thing within his attention and which was for him to do," then the verdict must be for the plaintiff.

With these facts found in favor of the defendant, we are brought to a consideration of the effect of chapter 345 of the Laws of 1860, as that act was in force at the time of the execution of the lease in question. It was repealed by chapter 547 of the Laws of 1896, known as " The Real Property Law," but was substantially re-enacted by section 197 of that law. The act of 1860 reads as follows:

" The lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises and of the land so leased or occupied."

It is so well settled that it is not open to discussion in this State, that a lease of real property contains no implied covenant that it is reasonably fit for habitation ; and that in the absence of an express covenant, unless there has been fraud, deceit or wrongdoing on the part of the landlord, the tenant is without remedy, even if the demised premises are unfit for occupancy. In such cases the tenant hires at his peril, and a rule similar to that of *caveat emptor* applies, and throws on the lessee the responsibility of examining as to the existence of defects in the premises and providing against their ill-effects (*Franklin* v. *Brown*, 118 N. Y. 110), and the court so charged. The respondent concedes that no element of fraud or deceit arises on the evidence. Nor was there any covenant in the lease, or any written agreement, requiring the landlord to make any repairs or alterations. On the contrary, the lease contained a provision for the tenant's surrender of the premises at the expiration of the term in good condition, " damages by the elements excepted."

*Suydam* v. *Jackson* (54 N. Y. 450) held that the statute contemplated a sudden destruction or injury by the elements, and not the gradual deterioration produced by the ordinary action of the elements ; but the authority of that case is much shaken by *Tallman* v. *Murphy* (120 N. Y. 345), where it was expressly held that all that was necessarily decided in the *Suydam* case was that " such injuries as are the result of failure to make ordinary repairs, when the landlord has not agreed to make them, do not come within the statute, because it was not intended to modify or change the relative duties of the parties to the lease in that respect." This eliminates from the decision its authority as to the necessity of a sudden and violent destruction of the premises.

The appellant contends that the statute relieves the tenant only where there is a total destruction of the premises or an injury to

the premises themselves rendering them untenantable ; and that as the premises here involved actually continued in the same condition, up to the time of the surrender, that they were in at the time of the lease, the circumstances do not call for the operation of the statute. We cannot agree with this contention. It fails to consider the words of the statute, that the rent is to cease if the premises not only " be destroyed," but also if they " be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy.".

The appellant practically contends that if the untenantability resulted from the combination of a gradual deterioration of the premises with a sudden action of the elements, the statute furnishes no defense. This contention fails to take into account the words, " any other cause," broader terms than which could hardly be used.

Stripped of these preliminary objections, the question which remains to be considered may be stated most favorably for the plaintiff as follows: The premises at the time of the lease were in such a state that by gradual deterioration they fell into such condition that heavy rains soaked into, or ran into and flooded the cellar, so as to render the premises untenantable. It is evident that except for the elements the premises would have been tenantable and fit for occupancy and that they were rendered untenantable and unfit for occupancy, either by the elements or by some other cause. In other words, water, one of the elements, was the proximate cause of the injury, and by the interposition of this element the premises were rendered untenantable and unfit for occupancy.

We need not inquire, therefore, whether the injury was the result of a combination of the two causes referred to, but may predicate on the verdict that it resulted directly from the element of water, without the presence of which there would have been no such injury. We are confirmed in our judgment by the decision of the Court of Appeals in *Sully* v. *Schmitt* (147 N. Y. 248), where the legal effect of the statute was under consideration. The premises, containing a defective sewer, were let to a tenant. The tenant endeavored to remedy the defect, but the landlord made no such attempt and continued to maintain the premises in an offensive condition, so that stenches entered the building, creating a condition of

things amounting to a nuisance dangerous to life.   The court held
that this constituted an eviction at law, warranting an abandonment
of the premises under the law of 1860.   A more full statement of
the facts in this case is contained in the report of the appeal on a
previous trial (*Sully* v. *Schmidt,* 11 N. Y. Supp. 694).   That report
contains a dissenting opinion by Mr. Justice HATCH, which was practi-
cally adopted in the Court of Appeals on the last appeal.

In *Vann* v. *Rouse* (94 N. Y. 401) it was contended that the court
below erred in giving instructions to the jury : "That if, without
fault or negligence on the part of the tenants, the rooms were unten-
antable and unfit for occupancy, they were justified in leaving, and
would not be bound thereafter to pay rent." The court held that
this constituted no error.

It would seem to result necessarily from these authorities that, as
the premises were rendered untenantable and unfit for occupancy
by the inflow of water, there was an eviction at law which justified
the tenant in surrendering the premises, and that his estate is not
liable to pay rent thereafter.

The judgment must be affirmed.

All concurred.

Judgment and order affirmed, with costs.