## MAJESTIC HOTEL CO. v. EYRE.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. ABANDONMENT BY TENANT—CONSTRUCTIVE EVICTION—SCARLET FEVER.

Where an outbreak of scarlet fever occurred in the plaintiff's hotel, in which defendant and his family occupied a suite of rooms under a lease, without negligence on the part of plaintiff, or lack of diligence on his part to prevent the spread of the disease, such state of facts does not constitute an eviction, actual or constructive, nor fall within Laws 1860, c. 345, providing that leased premises so destroyed or injured by the elements or any other cause as to be untenantable may be surrendered by the lessee unless there be a written agreement to the contrary.

2. SAME—RELETTING—SURRENDER—ACCEPTANCE.

Where defendant abandoned leased premises without legal justification, and plaintiff notified him that it would hold him for the rent, and later informed him that it had exhibited the premises to possible tenants, and would be able to rent them on certain terms, and would do so unless he notified them of his disapproval, which defendant did not do, the plaintiff did not accept defendant's surrender and relieve him from payment of rent by leasing the premises and crediting defendant with the rent received.

Appeal from judgment on report of referee.

Action for rent by the Majestic Hotel Company against Edward Eyre. From a judgment for plaintiff entered on the report of a referee, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and O'BRIEN, JJ.

William L. Turner, for appellant.

Charles H. Brush, for respondent.

HATCH, J. This is an action for rent of certain apartments in the Hotel Majestic under a letting for a year. The defendant interposes as a defense that the premises became uninhabitable by reason of the breaking out of an epidemic of scarlet fever. It was not claimed that the plaintiff, by any act which it did, caused the fever to break out, or that by reason of it the apartments became physically uninhabitable. In fact, so far as physical surroundings were concerned, the apartments were as habitable when the defendant voluntarily vacated them as when they were leased. It is also clear that after the fever was discovered the usual precautions known to science were taken to isolate the cases and prevent the spread of the disease. There were about 400 persons occupying apartments under lease in the hotel at the time of the breaking out of the fever; and for the most part, if not all of these tenants, they continued to remain and occupy their apartments, without detriment to either health or comfort. The defendant abandoned his apartments on account of the fear of contagion to himself and family. We are, therefore, to see

if this is sufficient to excuse the payment of rent. We know of no ground upon which the payment of rent can be successfully resisted, except the particular case falls within the terms of the statute (chapter 345, Laws 1860) now included in section 197 of the real property law, or unless there was an eviction, either actual or constructive. The statute does not seem to cover the case. By virtue of its terms, the premises demised must be either destroyed or so materially injured by the elements or other cause as to be rendered uninhabitable and unfit for occupancy. The statute evidently contemplates a physical destruction. The occasion for its passage was to relieve tenants from the payment of rent where the premises were physically destroyed by action of the elements. Suydam v. Jackson, 54 N. Y. 450. The rule of this case has been somewhat extended by attaching additional force to the words "or any other cause," and it is now held that gradual deterioration, rendering the premises uninhabitable, can be availed of to defeat a recovery for rent. Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716; Meserole v. Sinn, 34 App. Div. 33, 53 N. Y. Supp. 1072; affirmed on appeal in 161 N. Y. 59, 55 N. E. 274. But the injury must still be the result of physical causes, and produce physical injury rendering the premises uninhabitable, or it does not fall within the statute. There is not even a pretense of physical injury to these apartments, rendering them uninhabitable. The exemption, therefore, created by the statute, may not avail to avoid the recovery. To constitute an eviction, there must be possession by paramount title, or acts upon the part of the landlord, or of those persons subject to his control, which make the occupancy so uncomfortable that the tenant is justified in removing therefrom. There was in this case no claim of paramount title in any other person, nor was there actual expulsion of the tenant from the premises; neither was there any affirmative act upon the part of the landlord which required the tenant to remove. In the cases relied upon to justify the removal, that of Sully v. Schmitt, 147 N. Y. 248, 41 N. E. 514, is as favorable to the defendant's contention as is any to be found in the reported cases; but in that case there was a series of affirmative acts upon the part of the landlord which made occupancy of the premises dangerous to life and health. It is not, however, necessary that there should be affirmative acts of the landlord, to work an eviction. We doubt not, if the landlord was guilty of affirmative negligence, or negligently suffered acts to be done by which a contagious disease was introduced into a thickly-populated hotel or tenement house, or, upon the breaking out of a contagious disease upon the premises, if he, retaining and exercising a general control over the public parts of the house, should negligently omit to take precautions to prevent the spread of the epidemic, or otherwise to protect the tenants from contagion, when the means lay within his power so to do, a case might be made which would avail as a justification for the surrender of the premises. But such a case must be clearly established, and must be founded in positive neglect upon the part of the landlord, whereby, as a result, continuing to remain upon the premises would be clearly dangerous to life and health. In such a case the negligence of the landlord would be counted as an affirmative act, and in principle the

case would find support in Tallman v. Murphy and Sully v. Schmitt, supra. In the present case, however, there is nothing that appears which would justify a finding of negligence upon the part of the landlord in introducing the epidemic, or in preventing its spread after it made its appearance in the hotel. On the contrary, every precaution which science or the board of health suggested was adopted. The finding of the learned referee has settled such questions, and it is abundantly supported bv undisputed evidence. There is, therefore, no eviction, either actual or constructive, to be spelled out of the facts of this case, and therefore there is no defense in this claim. The reletting of the premises was by consent of the tenant. The latter had taken his position in the claim that the premises were uninhabitable, and he remains consistent in this claim.

As the defendant fails in establishing a legal defense to the action, the judgment should be affirmed, with costs. All concur.