THE HOME INSURANCE COMPANY, Respondent, *v.* THE WESTERN TRANSPORTATION COMPANY, Appellant.

A plaintiff upon appeal must stand by the theory of his case as presented by his complaint and upon the trial. Accordingly,—*Held,* that where plaintiff sued and claimed upon the trial as assignee, he could not upon appeal assert a claim other than that given by the assignment.

Where a disaster happens to a cargo in consequence of a peril or accident not within the exceptions in the bill of lading, a mere acceptance of the goods by the owner at the place of the disaster or an intermediate port will not preclude him from his remedy. It must appear that the acceptance was intended as a discharge of the vessel and her owner from any further responsibility.

The case of *The Propeller Mohawk* (8 Wallace, 153) distinguished.

To establish the settlement of a large and unquestionable claim for a small sum, the evidence should be clear and satisfactory.

(Argued May 9, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of the plaintiff entered upon the report of a referee. (Reported below, 4 Robt., 257; 33 How. Pr., 102.)

The action was brought by the plaintiff, as assignee of Messrs. L. Roberts & Co., against the defendant as common carrier, to recover damages for injuries to a cargo of wheat.

The answer, among other things, alleged a settlement of the cause of action by Messrs. L. Roberts & Co., the plaintiff's assignors, before their assignment to the plaintiff. Upon the trial the following facts appeared:

On the 23d of October, 1860, J. W. Smith shipped at Oswego, in good order and condition, on the defendant's canal boat Denison, 5,720 bushels of wheat, to be delivered in like good order and condition to L. Roberts & Co., consignees at the city of New York, they paying freight and charges; it being stipulated in the bill of lading that damage or deficiency in quantity was to be deducted from the charges by the consignees. On the arrival of the boat at Fort Plain in the latter part of December, 1860, she suspended her voyage and the wheat was found to be damaged by water. The defendant gave notice to the consignees and they notified the plaintiff, who had insured the cargo for them. Plaintiff had an agent at Fort Plain; and defendant's agent at New York telegraphed plaintiff's agent at Fort Plain December 27, 1860, to take charge of the cargo for account of whom it might concern. The defendant also sent an agent from Albany to Fort Plain to act for it; and, after conference with him and by consent of all parties, plaintiff's agent took the entire cargo, separated the damaged wheat (1,781$\frac{16}{60}$ bushels) from the uninjured portion of the cargo, sold it for the best price that could be obtained, and stored the residue. The wet wheat realized $534.38; and the actual loss and damage sustained by the consignees on the wheat was $2,461.98, less the salvage, leaving a net loss of $1,846.75. In the spring of 1861, by consent of all parties, the defendant took the sound wheat which had been stored, and reshipped the same on another boat belonging to it called the Northamptonshire, and brought the same to New York, where it delivered it to the consignees under the terms of the original bill of lading. On the delivery of the same, May

9, 1861, the consignees gave the defendant a receipt acknowledging that they had "received 5,720 bushels of wheat, less 1,781$\frac{46}{60}$ bushels received by consignors at Fort Plain from boat Lyman Denison." At the time this receipt was given there was a settlement between the consignors and the defendant, in which the defendant allowed for some bushels of wheat short, and fifty dollars "for general average." This fifty dollars the defendant claims was paid for the damage to the wheat claimed in this action. There was conflict in the evidence as to what the fifty dollars was paid for.

On the 20th of May, 1861, the plaintiff paid the consignees the amount of their loss, and took an assignment of their claim for damages against the defendant.

The referee reported in favor of the plaintiff, and found, substantially, the above facts; and also that the alleged settlement did not cover or include the damages claimed in this action.

*John Hubbell* for the appellant. Plaintiff released defendant from any responsibility by taking the property before it had reached its destination. (*The Case of the Mohawk*, 8 Wal. U. S. R., 153, 161, 163.) The damage was from causes for which defendant was not responsible. (*Parsons* v. *Handy*, 14 Wend., 217.) Plaintiff was not presumed to know or inquire as to any possible equities between the consignee and the underwriter. (*Mollison* v. *The Monticello*, 17 How., 152.)

*William Allen Butler* for the respondent. Defendant was liable for all losses, and no proof of negligence was necessary. (*Kemp* v. *Coughtry*, 11 J. R., 107; *Miller* v. *Steam Nav. Co.*, 10 N. Y., 431, 437; *Merritt* v. *Earle*, 31 Barb., 38.) Plaintiff had a right to recover in this action independently of the assignment to it by Roberts & Co. (*Austin* v. *N. J. Steamboat Co.*, 43 N. Y., 75, 76; *Fulton F. Ins. Co.* v. *Baldwin*, 37 id., 608, and cases cited.) Defendant being liable for damages, plaintiff upon taking the pro-

perty as insurer became subrogated to all the rights of the insured. (*Smyth* v. *Wright*, 15 Barb., 51, 53; *Mayor N. Y.* v. *Pentz*, 24 Wend., 668, 671, and cases cited; *Atlantic Ins. Co.* v. *Storrow*, 5 Paige, 585; *N. Y. Ins. Co.* v. *Roulet*, 24 Wend., 513.) Plaintiff is not affected by anything occurring between defendant and the consignees after the loss and the transactions attending it. (*Warren* v. *Skinner*, 20 Conn., 558; *Palmerston* v. *Huxford*, 4 Den., 166; *Neary* v *Bostwick*, 2 Hilt., 514; *Hart* v. *West. R. R. Co.*, 13 Metc., 99.)

EARL, C. The plaintiff, in its complaint, bases its right to recover solely upon a cause of action alleged to have been assigned to it by L. Roberts & Co., and it must upon this appeal, as it did upon the trial, stand by the theory of its complaint. It was admitted upon the trial that the wheat was damaged by water on the way to Fort Plain, before delivery, while in possession of the defendant as carrier. It was not proved how the damage was occasioned, nor that it resulted from any cause which would excuse the defendant from its liability as common carrier. Hence sufficient appeared to establish the liability of the defendant. If it claimed that the wheat was damaged from inevitable accident, the burden was upon it to show it. (Angell on Car., §§ 188, 202, 472; *King* v. *Shepherd*, 3 Story Cir. Ct. R., 349; *Hawkes* v. *Smith*, 1 Car. & Marsh. R., 72.)

It is only necessary further to inquire whether the defendant was discharged from this liability by the delivery and receipt of the wheat at Fort Plain or the alleged settlement made in New York.

1. It is claimed that L. Roberts & Co. voluntarily received the damaged wheat at Fort Plain, and that this discharged the defendant from all liability for damage to the wheat, and this claim is sought to be sustained by *The Case of the Propeller Mohawk* (8 Wal., 153). In that case Judge NELSON, after stating that in case the disaster to the cargo happened in consequence of one of the perils within the exception in the

bill of lading, it is perfectly well settled that if the shipper voluntarily accepts the goods at the place of the disaster or at any intermediate port, such acceptance terminates the voyage and all responsibility of the carrier, and that the master is entitled to freight *pro rata itineris*, further states as follows: " The same rule as it respects the effect of the voluntary acceptance of the goods at the place of the disaster or intermediate port applies in case the ship is disabled or prevented from forwarding them to the port of destination by a peril or accident not within the exception in the bill of lading. The only difference between the cases is that inasmuch as in the latter the vessel is responsible for all damages that have resulted from the misfortune to the cargo, the proofs of the acceptance of the goods at the intermediate port, in order to operate as a discharge of the vessel, should be clear and satisfactory. The mere acceptance in such cases, and nothing else passing between the parties, ought not to preclude the shipper of his remedy. It should appear from the evidence and circumstances attending the transaction that the acceptance was intended as a discharge of the vessel and owner from any further responsibility ; what would be equivalent to a mutual arrangement, express or implied, by which the original contract in the bill of lading was rescinded. The ground of the exemption from responsibility of the vessel in both cases is the voluntary acceptance of the goods at the intermediate port." After thus laying down the law, the learned judge reaches the conclusion upon the evidence that the acceptance of the goods in that case at the place of the disaster was voluntary, and with intent to discharge the carrier from all liability.

Here there was no such acceptance. All parties were notified of the detention of the boat and the disaster to her cargo. The general agent of the defendant at New York telegraphed to the insurance agent of the plaintiff, at Fort Plain, to take entire charge of the cargo of wheat " for account of whom it may concern." In pursuance of this telegram, the insurance agent, with the knowledge and consent of the defendant,

took the wheat from the boat, sold the damaged wheat and stored the balance in a storehouse. In the spring the sound wheat was delivered from the storehouse upon an order of the defendant, and taken by it and carried to New York in fulfillment of the original contract to carry it, and was there delivered to L. Roberts & Co., the consignees. Here there was positively nothing to indicate that the consignees or the insurance company, the plaintiff, intended at Fort Plain to discharge the defendant from liability for the damage to the wheat. The defendant certainly did not understand that its original contract in its bill of lading was rescinded because it took the wheat in the spring and carried it to its destination under that bill of lading. It would be quite preposterous to hold that because the insurance agent took possession of the wheat at the request of the defendant and with the consent of the consignees and the insurance company, for the benefit of all parties interested, such acceptance, without more, should operate to discharge the defendant from its liability as carrier. To work such a result the proof should be quite clear and satisfactory. The defendant did not ask to be discharged; and what reason could have induced the consignees or the insurance company voluntarily to discharge, without any consideration or compensation, a liability which seems to be undisputed for nearly $2,000 ?

The defendant is without any finding from the referee that the wheat was accepted at Fort Plain with intent to discharge the defendant. But he found simply that the consignees abandoned the wheat to the plaintiff as insurer thereof, and the latter took possession thereof with the consent of the defendant. In support of the judgment we must assume that the referee found, as he was authorized to upon the proof, that the acceptance was without any intent to discharge the defendant. The only effect, therefore, of the acceptance of the damaged wheat at Fort Plain was to enable the defendant, as carrier, to charge *pro rata* freight upon it, and it did not discharge it from the liability sought to be enforced in this action.

2. It is further claimed that the defendant maintained upon the trial of this action its defence of settlement. It was proved that after the delivery in New York of the sound wheat, a clerk of the consignees and an agent of the defendant settled for the freight and towing, and that upon such settlement a deduction was made from freight due the defendant for deficiency in quantity of wheat delivered, and also "fifty dollars for general average." This settlement was made between two persons who knew nothing about the extent of the damage to the wheat, and without any figures or data from which they could ascertain the damage. It does not appear that the amount or extent of damage was talked over. While it is quite improbable that the fifty dollars was allowed and agreed upon as a satisfaction for the damage, amounting to nearly $2,000, it does not satisfactorily appear what it was allowed for. Defendant's agent testified that it was allowed for the entire damage to the wheat. The clerk of the consignees testified that it was not allowed for that, but that it was a customary deduction in all settlements for freight in such cases, and he was confirmed as to the custom by the testimony of an insurance adjuster. But there is probably some mistake about it. The blank policy which I find in the case provides that, in case of loss, the insurer shall pay to the insured the whole amount of loss to the amount insured, "deducting in all cases, instead of average, fifty dollars on losses on wheat and other grain." This deduction would in all cases fall upon the assured as his contribution toward the loss. It was this rule of deduction which the parties probably attempted to apply in this settlement. But by mistake they took the fifty dollars out of the carrier instead of the assured, and the result is that after allowing the fifty dollars as a deduction from its freight, the carrier is still adjudged to pay the full amount of the damage. There can be no usage or custom which tolerates or sanctions this. The judgment against the defendant in this case is, therefore, probably too much by fifty dollars, but we cannot rectify the mistake, as the allowance of the fifty dollars was not claimed in the answer

nor upon the trial, and there is no exception which brings the question before us.

The evidence as to the settlement is quite vague and uncertain. To establish a settlement of so large a sum by the payment or allowance of such a small amount, it should have been clear and satisfactory. It is enough for us that the referee found that the claim made in this action was not included in the settlement. His finding upon this question is conclusive.

I therefore reach the conclusion that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.