IRVING G. VANN et al., as Executors, etc., Appellants, *v.* SIMEON ROUSE et al., Respondents.

Under the act of 1860 (Chap. 345, Laws of 1860) releasing the lessee of a building from liability for rent after injury to the building, without his fault or neglect, rendering it untenantable, "unless otherwise expressly provided by written agreement," to deprive a tenant of the benefit of the

statute, there must be an express written agreement on his part indicative of an intent to waive such benefit.

A lease contained a provision "that in case the tenant shall abandon the premises at any time, the rent then due or to become due" shall be due and collectible. *Held,* that this was not such an agreement.

In an action upon a guaranty of payment of rent, reserved by a lease of certain rooms in a building, defendants set up, by way of counter-claim, and proved damages to the furniture and fixtures of the lessee by reason of a flow of water from other parts of the building under the control of the lessor, because of defective water pipes, which he, after notice, omitted to keep in order, and an assignment of such damages to defendants." No question was raised upon the pleadings, and no objection was made upon the trial that the liability of the landlord was not the proper subject of a counter-claim. *Held,* that it could not be raised upon appeal.

(Argued December 10, 1883; decided January 15, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of defendants, entered upon an order made January 21, 1882, which denied a motion for a new trial and directed judgment upon a verdict.

This action was brought upon a guaranty of payment of rent reserved by a lease, the substance of which, as well as the material facts, are stated in the opinion.

*M. M. Waters* for appellants. The court clearly erred in holding that the defendants were, without assignment, entitled to set off the damages sustained by the society by reason of the injury to the furniture, carpets, etc., for the reason that the society was insolvent. (*Gillespie* v. *Terrence,* 25 N. Y. 306; *Lasher* v. *Williamson,* 55 id. 619; *Smith* v. *Felton,* 43 id. 419; *O'Blenis* v. *Karing,* 57 id. 649.) This damage to property outside the leased property, if a cause of action at all, was solely one in tort, and therefore not a set-off, counter-claim, or recoupment, even in favor of the society, much less in favor of defendants in this action. (*Edgerton* v. *Paige,* 20 N. Y. 281; *Boreel* v. *Lawton,* 90 id. 293.) The court erred in holding as matter of law that if the premises were untenantable and unfit for occupancy on the 24th of December, 1874, without fault of the tenants, then they were justified in leaving, and were not

liable for more than $75 and interest. (*Crogin et al.* v. *N. Y. C. R. R. Co.*, 51 N. Y. 61; *Butler* v. *Kidder*, 87 id. 99.) The court erred in holding that the landlord was liable for the damages arising from the negligence of other tenants in the building, if he was notified of the defect, or if the defect came to his knowledge and he failed within a reasonable time to use all reasonable care and diligence in repairing that defect. (*Robbins* v. *Mount*, 4 Robt. 553; *Witty* v. *Mathews*, 52 N. Y. 512.) The defect was not one which came within the meaning of the statute of 1860 (Chap. 345). (*Suydam* v. *Jackson*, 54 N. Y. 450; *Locknow* v. *Hergan*, 58 id. 635.) The court erred in refusing to charge that the lessees had the right to repair the part of the water pipe which passed through the hall over the part of the building occupied by them. (*Lampson* v. *Milks*, 21 N. Y. 508; *Coddington* v. *Dunham*, 35 N. Y. Sup. Ct. 442.)

*William G. Tracy* for respondents. The statute of 1860 applies to every case where the demised premises become untenantable and unfit for occupancy from any cause other than the want of such ordinary repairs to the demised premises as the tenant is bound to make. (*Fash* v. *Kavanagh*, 24 How. 347; Laws of 1860, chap. 345; *West Side S'v'gs B'k* v. *Newton*, 57 How. 152; 76 N. Y. 616.) The negligence on the part of the lessor, by which the demised premises became untenantable, after his promise to repair, repeatedly made and broken, amounted to an eviction, and justified the lessees in surrendering possession without reference to the statute of 1860. (*Alger* v. *Kennedy*, 49 Vt. 109; *Jackson* v. *Eddy*, 12 Mo. 209; *Roger* v. *Ostrom*, 35 Barb. 523; *Toole* v. *Beckett*, 67 Me. 544; *Sequard* v. *Corse*, 9 W. D. 51; *Dyett* v. *Pendleton*, 8 Cow. 727, 731, 735; Wood's Landlord and Tenant, § 384; *Collins* v. *Barrow*, 1 M. & R. 112; *Cowie* v. *Goodwin*, 9 C. & P. 378.) A party who deprives another of the consideration upon which his obligation is founded cannot, in general, recover for a violation of that obligation. (*Dyett* v. *Pendleton*, 8 Cow. 731, 735.) The lessees, defendant's assignors, could recover from the plaintiff, its lessor, all damages sustained by such lessee

from the neglect and failure of the plaintiff .to stop the leakage of water into the premises after notification thereof. (*Rogers* v. *Ostrom*, 35 Barb. 523 ; *Stapenhorst* v. *Am. Manuf. Co.*, 46 How. Pr. 510; *Toole* v. *Beckett*, 67 Me. 544.) It was not necessary that the acts complained of should amount to an eviction. (*Lucky* v. *Frantzke*, 1 E. D. Smith, 47 ; *Morgan* v. *Smith*, 5 Hun, 220 ; *Cooke* v. *Soule*, 56 N. Y. 420 ; *Myers* v. *Barns*, 35 id. 269.) The sureties of an insolvent lessee in an action for rent may avail themselves of any counter-claim existing in favor of their principal to an extent sufficient to defeat a recovery without proof of an assignment or transfer of such counter-claim to them. (*Morgan* v. *Smith*, 7 Hun, 244.) A covenant for quiet enjoyment of the premises during the term is implied on the part of the lessor in every lease for three years. (*Mayor* v. *Mabie*, 3 Kern. 152; *Boreel* v. *Lawton*, 90 N. Y. 293.) The failure of the landlord to perform the agreement to repair gave the tenant a cause of action on contract, and is a proper counter-claim in this action. (*Cooke* v. *Soule*, 56 N. Y. 420; 1 N. Y. Sup. Ct. 116 ; *Gleadell* v. *Thompson*, 56 N. Y. 194, 200.) As the damages were sustained from the failure to repair certain parts of the building in the possession and under the control of the plaintiff, the charge that he is liable was proper. (*Priest* v. *Nichols*, 116 Mass. 401.) The tenant would have been a trespasser if he had interfered with the water pipes of the landlord. (*West Side S'v'gs B'k* v. *Newton*, 57 How. 152; *Coddington* v. *Dunham*, 35 N. Y. Sup. Ct. 442.)

DANFORTH, J. On the 22d of April, 1873, the plaintiff leased to the Second Universalist Society, of Syracuse, three rooms in the second story of No. 61 South Salina street, Syracuse, to be occupied by them "as a place for religious worship, and purposes connected therewith, for the term of three years, commencing on the 1st day of May, 1873, and ending on the 30th day of April, 1876, at the annual rent of $400 the first year, and $500 the next two years; in equal monthly payments — subject, however, to the provision that in case the

tenant shall abandon the premises at any time, the rent then due or to become due, on this lease, "shall be in reality due and collectible."

This agreement was upon conditions, all of which the tenant undertook to perform, and among others, to pay the rent at the times above specified. The defendants guaranteed the payment of the rent as it became due. It was paid by the tenants up to November 1, 1874, but soon after they abandoned the premises, because, as they alleged by reason of a flow of water from other parts of the building, owned by the lessor and under his control, they became untenantable and not fit for the purposes for which they were hired. There was evidence to warrant this assertion and to show also that the fixtures and furniture of the society were injured by the water and the plaster which it brought down, and that the tenants suffered damage thereby in other respects.

This action was brought upon the guaranty to recover rent accruing by the terms of the lease after the tenants vacated the premises. The defendants, to defeat the action, relied upon the facts above stated, and set up by way of counter-claim those damages which the tenants had sustained. It was assumed by both parties that there was evidence from which the jury might find the defendants to be assignees of the tenant in respect to them, but the contention of the plaintiff was that the assignment was not made until after the commencement of the action, and so not available to the defendants. It does not appear that upon the trial any question was raised on the pleadings, and the written argument of the appellants leads to the inquiry, whether in view of the evidence the court erred in giving instructions to the jury:

*First :* "That if without fault or negligence on the part of the tenants, the rooms were untenantable and unfit for occupancy, they were justified in leaving and would not be bound thereafter to pay rent."

At common law the rule was otherwise. The lessee was held by the obligation of his express covenant to pay rent, although the premises had been actually destroyed. But the rights of

the parties were regulated by statute (Session Laws of 1860, chap. 345), and the charge of the judge followed its language. The immunity afforded by it is absolute, " unless otherwise expressly provided by written agreement or covenant " (statute, *supra*). And the learned counsel for the appellants argues that the stipulation in the lease, which makes the whole rent at once due and collectible in case the tenant abandons the premises, is such an agreement. We cannot, however, find in the words referred to any evidence of an intention on the part of the lessees to waive the advantage which the written law gives them. The statute declares that under certain conditions a tenant shall not be bound to pay rent after injury to the premises, and there are no words in the lease referring to such event or providing that the tenants will pay, notwithstanding its occurrence. Here is no new or additional promise to pay rent, but merely a stipulation waiving the prescribed period of credit which the tenant would otherwise have.

When the legislature casts a charge or duty upon the owner of premises, there must be something more than this to shift the burden from him to the tenant. The law put upon the landlord the risk of having premises unfit for occupation, and here before the condition of the lease attached, upon which payment was expedited, the statute intervened and released the tenant from his obligation to pay, after the day of the injury, so that at the time of abandonment liability to pay rent had ceased. It could not accrue " after the premises became untenantable and unfit for occupancy," and there was nothing therefore to which a stipulation could apply. The statute is not within the covenant, and there are no words from which it can be inferred that the parties had the law in their minds. There is certainly no agreement that the tenant shall continue liable, notwithstanding its provisions, and they cannot be made so without an express covenant. The plaintiffs' contention would, if successful, operate, so far as the tenants are concerned, as a repeal of the statute and subject them to the rigor of the common law. This claim is not sustainable.

" *Second:* We are referred to no evidence which would

warrant a finding that the assignment of the claim for damages was made after the commencement of the action. The written transfer was lost, but its execution was not controverted, and the circumstances attending it, as well as the testimony of witnesses, permit no other inference than that its delivery was before suit actually brought. It was sufficient to defeat a recovery for rent otherwise due, and if the facts found established injury, for which the plaintiff was responsible, furnished cause for an affirmative judgment against the landlord. Indeed the case was tried upon this theory, and at the plaintiff's request the court charged that the defendants could not recoup for damages unless they resulted from the positive acts or negligence of the plaintiff or his agent. There was evidence of these things, and the verdict established that the tenants were justified in abandoning the premises, and that they did sustain damages by reason of the plaintiff's omission to keep in order water pipes and closets in rooms under his control, after notice that they were defective and causing injury to the plaintiff. He might have been held liable for a breach of covenant for quiet enjoyment which the law implies in such a lease (*Boreel* v. *Lawton*, 90 N. Y. 293; 43 Am. Rep. 170), or for failing to keep his promise after notice to remove the cause of damage. The plaintiff cannot complain that his liability was not put specifically upon these grounds. The charge in this respect was not merely acquiesced in, but in various propositions submitted by the plaintiff, it was assumed that if the evidence justified a finding that injury was caused to the tenants by his acts or negligence, and that the claim for damages so occurring was assigned before suit, the defendants might have the benefit of it. The objection was not made that liability so incurred was not the proper subject of a counterclaim. It is, therefore, too late to raise it now. (*Home Ins. Co.* v. *West Trans. Co.*, 51 N. Y. 93; *Gleadell* v. *Thomson*, 56 id. 194.) We find no other point in the appellants' argument which requires discussion or affords ground for this appeal.

The judgment of the court below should, therefore, be affirméd.

All concur, except RUGER, Ch. J., who took no part.

Judgment affirmed.