### MESEROLE v. SINN.

(Supreme Court, Appellate Division, Second Department. November 1, 1898.)

LANDLORD AND TENANT—RENT — UNTENANTABLE PREMISES — RIGHT TO ABANDON.

　　Leased premises, by a gradual deterioration, fell into such condition that heavy rains soaked into or ran into and flooded the cellar, so as to make the premises untenantable. Laws 1860, c. 345, provides that lessees of premises which shall, without their fault, be so injured by the elements, or "any other cause," as to be untenantable, shall not be liable for the rent after such injury, and may quit and surrender possession. *Held,* that lessee was justified in surrendering the premises, and was not liable for subsequent rent, since an injury to the premises themselves by a sudden action of the elements is not necessary for the application of the statute.

Appeal from trial term, Kings county.

Action by Evelina A. Meserole against William E. Sinn, as executor of Walter L. Sinn, to recover rent. From a judgment entered on a verdict for defendant, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Michael Fennelly, for appellant.

James Troy, for respondent.

GOODRICH, P. J. On November 27, 1894, the plaintiff, by written lease, demised to Walter L. Sinn the premises known as "No. 404 Fourth Street, Brooklyn," for a term of 18 months. Mr. Sinn entered into the premises, and occupied them until October 24, 1895, when he vacated and surrendered them, on the ground that they had become and were so injured by the elements and other causes as to be absolutely untenantable, and unfit for occupancy. The evidence shows, and the plaintiff's counsel in his brief concedes, that after heavy rain storms water flowed into the cellar, so that it had to be bailed out on each of such occasions. There was evidence tending to show that after heavy rain storms water entered the cellar through the walls and foundations to the depth of several inches, that the foundations were

always damp, and that when the house was closed at night it became damp and close; that the same result followed from melting snow; that the tenant became sick and died subsequently to his removal from the house; and that his sister's children, constituting a part of his family, also became sick with malaria.   There was medical and other evidence tending to show that the house was not a safe one to live in, and perhaps this might be assumed judicially.   The court fairly submitted to the jury the condition of the premises at the time of the surrender, saying: "The only question that you have to pass upon is whether this place, from the element of water, got in such a condition, gradually or all at once, that it was untenantable, and unfit for occupation."   We must assume, therefore, that a verdict for the defendant established as a fact that the premises became so injured by water as to be untenantable, and unfit for occupancy.   The verdict having established this fact, the next question was whether they became so without any fault or negligence of the tenant.   That question also was submitted to the jury when the court instructed them specifically that, if the defect "came from the neglect of the tenant in not attending to the premises, and not remedying it,—that is to say, if he could do so,—and if it was a thing within his attention, and which was for him to do," then the verdict must be for the plaintiff.   With these facts found in favor of the defendant, we are brought to a consideration of the effect of chapter 345 of the Laws of 1860, as that act was in force at the time of the execution of the lease in question.   It was repealed by chapter 547 of the Laws of 1896, known as the "Real Property Law," but was substantially re-enacted by section 197 of that law. The act of 1860 reads as follows:

"The lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied."

It is so well settled that it is not open to discussion in this state that a lease of real property contains no implied covenant that it is reasonably fit for habitation, and that, in the absence of an express covenant, unless there has been fraud, deceit, or wrongdoing on the part of the landlord, the tenant is without remedy, even if the demised premises are unfit for occupancy.   In such cases the tenant hires at his peril, and a rule similar to that of caveat emptor applies, and throws on the lessee the responsibility of examining as to the existence of defects in the premises, and providing against their ill effects (Franklin v. Brown, 118 N. Y. 110, 23 N. E. 126); and the court so charged. The respondent concedes that no element of fraud or deceit arises on the evidence.   Nor was there any covenant in the lease, or any written agreement, requiring the landlord to make any repairs or alterations.   On the contrary, the lease contained a provision for the tenant's surrender of the premises at the expiration of the term, in good condition, "damages by the elements excepted."   Suydam v. Jackson, 54 N. Y. 450, held that the statute contemplated a sudden destruction or

53 N.Y.S.—68

injury by the elements, and not the gradual deterioration produced by the ordinary action of the elements; but the authority of that case is much shaken by Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716, where it was expressly held that all that was necessarily decided in the Suydam Case was that "such injuries as are the result of failure to make ordinary repairs, when the landlord has not agreed to make them, do not come within the statute, because it was not intended to modify or change the relative duties of the parties to the lease in that respect." This eliminates from the decision its authority as to the necessity of a sudden and violent destruction of the premises. The appellant contends that the statute relieves the tenant only where there is a total destruction of the premises, or an injury to the premises themselves rendering them untenantable; and that as the premises here involved actually continued in the same condition, up to the time of the surrender, that they were in at the time of the lease, the circumstances do not call for the operation of the statute. We cannot agree with this contention. It fails to consider the words of the statute that the rent is to cease if the premises not only "be destroyed," but also if they "be so injured by the elements, or any other cause, as to be untenantable, and unfit for occupancy." The appellant practically contends that, if the untenantability resulted from the combination of a gradual deterioration of the premises with a sudden action of the elements, the statute furnishes no defense. This contention fails to take into account the words "any other cause," broader terms than which could hardly be used. Stripped of these preliminary objections, the question which remains to be considered may be stated most favorably for the plaintiff as follows: The premises, at the time of the lease, were in such a state that by gradual deterioration they fell into such condition that heavy rains soaked into or ran into and flooded the cellar, so as to render the premises untenantable. It is evident that, except for the elements, the premises would have been tenantable and fit for occupancy, and that they were rendered untenantable and unfit for occupancy either by the elements or by some other cause. In other words, water—one of the elements—was the proximate cause of the injury, and by the interposition of this element the premises were rendered untenantable, and unfit for occupancy. We need not inquire, therefore, whether the injury was the result of a combination of the two causes referred to, but may predicate on the verdict that it resulted directly from the element water, without the presence of which there would have been no such injury. We are confirmed in our judgment by the decision of the court of appeals in Sully v. Schmitt, 147 N. Y. 248, 41 N. E. 514, where the legal effect of the statute was under consideration. The premises, containing a defective sewer, were let to a tenant. The tenant endeavored to remedy the defect, but the landlord made no such attempt, and continued to maintain the premises in an offensive condition, so that stenches entered the building, creating a condition of things amounting to a nuisance dangerous to life. The court held that this constituted an eviction at law, warranting an abandonment of the premises, under the law of 1860. A more full statement of the facts in this case is contained in the report of the appeal on a previous trial (11 N. Y. Supp.

694).   That report contains a dissenting opinion by Mr. Justice Hatch, which was practically adopted in the court of appeals on the last appeal.   In Vann v. Rouse, 94 N. Y. 401, it was contended that the court below erred in giving instructions to the jury "that if, without fault or negligence on the part of the tenants, the rooms were untenantable, and unfit for occupancy, they were justified in leaving, and would not be bound thereafter to pay rent."   The court held that this constituted no error.   It would seem to result, necessarily, from these authorities, that, as the premises were rendered untenantable and unfit for occupancy by the inflow of water, there was an eviction at law, which justified the tenant in surrendering the premises, and that his estate is not liable to pay rent thereafter.   The judgment must be affirmed.   ·

Judgment and order affirmed, with costs.   All concur.