CASE 94.—ACTION BY LENA SCOTT FLOOD'S TRUSTEE AGAINST SCOTT BROTHERS FOR RENT.— February 27.

## Scott Bros. v. Flood's Trustee

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for plaintiff. Defendants appeal. Reversed.

1.  Landlord and Tenant—Fire on Leased Premises—Abatement of Rent.—Ky. Stats., 1903, sec. 2297, provides that, unless a tenant otherwise contract, he shall not be liable for rent for the remainder of his term of any building leased by him and destroyed during the term by fire without his fault. Held, that where a group of buildings was leased, one of which was destroyed by fire during the term of the lease, without the fault of the tenant, he was entitled to abatement of the rent in the proportion that the rental of the building destroyed bore to the whole rent agreed to be paid.

2.  Same.—A provision, in a lease of two buildings, that, if the leased premises are rendered untenantable by fire or unavoidable accident, the lessee may surrender the lease, does not provide for a partial destruction of the premises, not rendering them untenantable, but only less valuable, and does not render inapplicable Ky. Stats., 1903, sec. 2297, relieving a tenant from liability for rent for the remainder of his term,

where any building leased by him is destroyed by fire without his fault.

MORTON, WEBB & WILSON, attorneys for appellants.

Our contention is that a building is none the less leased if it be included in a group of buildings leased, nor is it any the less leased, even if the amount of rent be not fixed in terms by the lease. (Kentucky Statutes, sec. 2297; Sun Insurance Co. v. Varble, Receiver, 103 Ky., 758.)

ALLEN & DUNCAN for appellee.

POINTS AND AUTHORITIES.

1. The statute applies both to a lease of a single building and to a lease of a group of buildings.

2. Under a lease of a single building the tenant should be relieved of his agreement to pay rent whenever the building is damaged by fire. It is not necessary that the property should be totally destroyed.

3. Under a lease of a group of buildings a total destruction of all the buildings is not necessary in order to discharge the tenant from his liability to pay rent, but he is equally discharged whenever any one or more of the buildings are either damaged or destroyed.

4. The tenant can never avail himself of the statute, whether the lease be of a single building or a group of buildings, unless the damage or destruction is such as to materially affect the value of the property to the lessee. A very slight damage will not discharge him.

5. Whether the lease include one building or a group of buildings the tenant in order to avail himself of the statute must surrender possession of the entire property.

6. Whenever the lease embraces a group of buildings and the rent of any one or more of the buildings has been separately stipulated or fixed, the tenant in the event such building or buildings are damaged or destroyed is relieved from his liability for the rent of such building or buildings as fixed by the lease, and cannot be required to surrender possession of the remainder of the buildings. To avail himself of the statute it is necessary only that he surrender possession of the property on which stood the damaged or destroyed buildings.

7. There can be no difference in principle so far as the construction of the statute is concerned between a lease of a single building and lease of a group of buildings. In either case the

Scott Bros. v. Flood's Trustee.

rights and liabilities are the same. Therefore if in case of a lease of a single building the tenant in order to avail himself of the statute must surrender possession when the building has been partially destroyed, then it follows necessarily that in case of a lease of a group of buildings, and one building is damaged or destroyed, the lessee must surrender possession of the entire premises leased. If he elects to retain possession in either case he must pay the stipulated rent.

8. The statute has been construed by this court and the question at bar decided in the case of Thomas v. Conrad, 114 Ky., 841. That case must be overruled if the present opinion is to stand.

9. The object of the statute was merely to relieve the lessee of the onus of the common law rule. It was not intended to place new burdens on the lessor. The effect of the court's interpretation of the statute is to visit upon the lessor a serious hardship.

10. In the case at bar the destruction of the main warehouse undoubtedly gave the appellants the right to surrender the property and cancel the lease. By refusing to surrender and electing to retain possession they were bound to pay the stipulated rent.

11. The following cases cited by the court as authorities for its decision examined and found, as we think, not to be in point: (Wattles v. South Omaha C. & I. Co., 50 Neb., 251, 35 L. R. A., 424; Taylor v. Hart (Miss.) 30 L. R. A., 716; Whitaker v. Hawley, 25 Kan., 674, 37 Am. Rep., 277.)

12. The following cases support the construction of the statute for which we contend: (Arbenz v. Exley, Watkins & Coir, 62 W. Va., 476, 61 L. R. A., 957; Roach v. Peterson, 47 Minn., 291, 50 N. W., 80, 601; Gay v. Davey, 47 Ohio State, 396; Johnson v. Oppenheim, 55 N. Y., 280; Smith v. Kerr, (N. Y.) 108 N. W., 31, 2 Am. St. Rep., 362.)

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Reversing.

In February, 1903, the appellants leased for 23 months, from the Security Trust & Safety Vault Company, of Lexington, as trustee of appellee, a lot in the city of Lexington, known as "Scott's Factory," upon which there was located four buildings—two designated as hackling houses, and two as warehouses. Appellants agreed to pay as rent for the premises

Scott Bros. v. Flood's Trustee.

$75 each month. It was provided in the lease that "said second party (appellants) is to take good care of said premises and return the same in as good condition as when received by said second party from said first party, ordinary wear and accident by fire and the elements and other unavoidable accidents excepted. If destruction as aforesaid, total or partial, ensue, so as to make the premises untenantable for the purposes designated, the lessee may surrender and cancel this lease." At the expiration of the lease it was renewed on the same terms for one year, beginning January 1, 1905, and ending January 1, 1906. On the 3d day of March, 1905, one of the warehouses upon the premises, without neglect or fault on the part of appellants, was totally destroyed by fire. Apellants refused to pay the full rent for the months of March, April, May, June, and July, 1905, and appellee, in August, 1905, caused to be issued for the rent in arrears a distress warrant against them, which was levied upon certain personal property. Appellants, by the execution of a bond under section 645 of the Civil Code of Practice, suspended a sale of the property under the warrant. A notice was given, under section 648 of the Civil Code of Practice, that motion for a judgment upon the bond would be made. Thereupon appellants filed an answer, setting up that the warehouse destroyed was the larger of the two buildings upon the premises used as warehouses, and that the fair rental value of the warehouse destroyed was $50 per month, estimated upon the basis that the fair rental value of the entire premises was $75 per month, and that the rent agreed to be paid should be abated during the term $50 per month. To this answer a demurrer was sustained. Thereafter another distress warrant was issued for the rent that accrued subsequent to the issual of the first warrant, and the same

proceedings had as were taken under the first war-
rant. The two proceedings were consolidated, and
appellants filed an amended answer, averring that, in
addition to the facts stated in their original answer,
the destruction of the warehouse, although it seri-
ously inconvenienced appellants and reduced the
scope of their business, did not render the leased
premises untenantable for the purpose of conducting
the business in which they were engaged or the busi-
ness for which the premises were leased, and that the
rent should be abated in the sum of $500 for the year,
because of the destruction of the building and conse-
quent loss of its use to appellants. To this pleading
a demurrer was also sustained, and judgment ren-
dered for the full amount of the rent.

The question to be considered is: Is a tenant
entitled to an abatement of the rent he contracted to
pay, if the buildings or any of them on the leased
premises are destroyed by fire or other cause without
fault or neglect upon the part of the tenant? Previous
to the enactment of section 2297 of the Kentucky
Statutes of 1903, it was the rule in this State that a
tenant, in the absence of a contract to the contrary,
was bound to pay the rent for the term, although the
premises might be destroyed by inevitable casualty,
and without his fault or neglect. Helburn v. Mofford,
7 Bush, 169. To relieve tenants from this harsh and
unreasonable rule of the common law, the Legislature
in 1893 enacted what is now section 2297 of the Ken-
tucky Statutes of 1903, providing that, "unless the
contrary be expressly provided for in the writing, no
agreement of a lessee that he will repair, or leave the
premises in repair, shall have the effect of binding
him to erect similar buildings, if without his fault or
neglect the same may be destroyed by fire or other
casualty, nor shall a tenant, unless he otherwise con-

tracts, be liable for the rent for the remainder of his term of any building leased by him, and destroyed during the term by fire or other casualty without his fault or neglect.'' It is the contention of appellee that this statute has no application to a rental contract that covers more than one building, unless the rent for each building is separately fixed in the writing; that where, as in this case, a group of buildings is rented for a fixed sum, the loss of one, or any less number than the whole, however material the ones destroyed might be, will not exonerate the tenant from the payment of the rent named in the contract; that the statute only protects the tenant when a single building rented is destroyed, or when, if more than one building is leased, the rent of each is separately stipulated.

In this view we are unable to concur. The purpose of the statute was to change the rule of law in force before its passage. It was designed to protect the tenant from the operation of a law that imposed upon him an unreasonable burden, and it should be so interpreted as to fairly carry out the intention of its enactment. If the construction contended for by appellee should prevail, the tenant who leased for a term a group of five buildings, equally useful and valuable to him, would be required to pay the rent stipulated in the contract, although four of the buildings were destroyed by inevitable casualty the day after the rental contract was entered into. To put it in another way: The statute would be limited in its operation to cases where all of the buildings leased were destroyed, and would afford no protection to the tenant in any other state of case, however serious the loss sustained by him might be. This construction would virtually destroy the usefulness of the statute, or so impair it that it would afford little benefit or protection to the

lessee. If a group of buildings are leased, and one or any less number than the whole are destroyed by fire, the tenant is entitled to an abatement of the rent in the proportion that the rental value of the buildings destroyed bear to the whole rent agreed to be paid. Of course, when one or more of several buildings have been destroyed, the landlord has the right of entry for the purpose of repairing or replacing them, and if the tenant denies this right, or interferes with it, he should be required to pay the full rent agreed upon. And if the landlord, before the expiration of the term, replaces the building destroyed by one equally as useful to his tenant, he may, after its completion, require the tenant to pay the rent fixed in the contract. If the landlord does not choose to restore the building, the use of which has been destroyed, or erect a new one in its place, the only loss he suffers is the deprivation of the reasonable rent of the building during the term. Nor will the tenant be permitted to use the land upon which the building destroyed was located without paying reasonable compensation for its use. The statute does not impose any obligation upon the landlord that he has not voluntarily assumed in the lease. It does not compel him to restore the building destroyed. Its sole purpose was to protect the tenant, or, rather, to relieve him from the payment of rent of buildings when their value to him have been totally destroyed without his fault or neglect. The statute in question has not heretofore been construed by this court, but similar statutes have received the consideration of other courts of last resort. Thus, in Wattles v. South Omaha C. & I. Co., 50 Neb. 251, 69 N. W. 785, 36 L. R. A. 424, 61 Am St. Rep. 554, it was held that, where a substantial portion of leased premises is destroyed without the fault of the lessee, he is entitled to an

apportionment of the rent covenanted to be paid and accruing thereafter, in the absence of an express assumption by him of the risk of such destruction. In Taylor v. Hart, a Mississippi case reported in 18 South, 546, 30 L. R. A. 716, and Whitaker v. Hawley, 25 Kan. 674, 37 Am. Rep. 277, questions similar to the one here involved were under consideration, and a conclusion reached in harmony with the views here expressed.

· The lease provides that, if the premises are rendered untenantable by fire or unavoidable accident, the lessee may surrender and cancel the lease; and it is contended for appellee that the statute has no application to this case, but the rights of the parties are fixed and determined by the terms of the lease. We do not so construe the clause in question. If the premises had been rendered untenantable, then under the provisions of the lease the lessee had the option of surrendering the premises and having the lease canceled. But the lease does not provide for a condition of affairs involving a partial destruction of the premises, or such an injury to them as would render them less valuable to the lessee without being untenantable. The answer, to which a demurrer was sustained, avers that the destruction of the building did not render the premises untenantable, and, as the lease does not provide for the contingency that actually happened, it follows that the statute is applicable.

Wherefore, the judgment of the lower court is reversed, with directions to proceed in conformity with this opinion.

Petition for rehearing by appellee overruled.