DENHAM and others, Respondents, vs. MADOLE and another,
Appellants.

*December 8, 1927—January 10, 1928.*

*Landlord and tenant: Untenantable premises: When lessee is re-
lieved from rentals: Statute adopted from sister state: Prior
construction by courts: Estoppel.*

1. A statute which is adopted from another state is taken with
   the construction theretofore placed upon it by the courts of
   that state.  p. 586.
2. Defendants, leasing the basement of a newly constructed build-
   ing for the purpose of conducting a billiard hall, soda fountain,
   etc., under a five-year lease, are *held* not liable for rent under
   the lease after surrendering possession of the premises, where
   the basement proved to be excessively wet, causing damage
   to the stock and equipment and ill health to the lessees, forc-
   ing them to move after occupying the premises about a year,
   since the situation rendered the premises "untenantable and
   unfit for occupancy" within the meaning of sec. 234.17, Stats.,
   which relieves the lessee from the payment of rent after
   surrendering possession; and the statute, being intended to
   relieve tenants from the rigors of the common law, should be
   liberally construed to give effect to the legislative intent.
   pp. 585, 590.
3. The lessees were not estopped from claiming exemption from
   liability for rent after vacating the premises because of the
   fact that they endeavored to perform the lease on their part
   by subletting the premises for use as a dance hall, where the
   proceeds were all turned over to the lessors and the lessors
   were actually benefited.  p. 589.
4. Where there was no express agreement in the lease that the
   tenant should continue liable irrespective of the subsequent
   condition of the premises, the landlord could not claim that
   sec. 234.17, Stats., did not apply.  p. 590.
5. The untenantable condition of the basement did not excuse the
   lessees from liability for rent during their occupancy prior
   to the date of vacation.  p. 590.

APPEAL from a judgment of the circuit court for Racine
county: E. B. BELDEN, Circuit Judge.  *Reversed, with di-
rections.*

Action to recover rent on written lease for basement of building. The lease was for five years from March 15, 1921, at a gross rental of $10,000. Part payment, then surrender of premises and refusal to pay balance, on the ground that premises were untenantable.

Jury trial. At the conclusion of the evidence a verdict was directed in favor of the plaintiffs. The defendants appealed and assigned as errors the directing of verdict for the plaintiffs, and entry of judgment thereon for the plaintiffs.

For the appellants there was a brief by *Whaley & Paulsen* of Racine, and oral argument by *Martin R. Paulsen* and *Vilas H. Whaley.*

For the respondents there was a brief by *Kearney, Kearney & Koelbel* of Racine, and oral argument by *Thomas M. Kearney, Jr.*

CROWNHART, J. The defendants contended that the leased premises were not tenantable because of leakage of water into the basement through the walls; that although at common law there was no implied warranty that the premises would be tenantable, the rule was changed by sec. 234.17, Stats.

The plaintiffs contend that said section is inapplicable to the facts, and that defendants are estopped from denying liability because of their acts relating to the lease and occupancy of the building.

Competent evidence on the part of the plaintiffs conclusively establishes the following facts: The lease was executed before the building was completed, and a $2,000 down payment was made thereon, balance to be paid monthly at the rate of $166.66 per month. When completed the basement was excessively wet, but *Denham,* one of the plaintiffs, who was an experienced builder, assured defendants that it would soon dry out, and defendants relied on such assur-

ance.   The defendants moved in and conducted a billiard hall, pool tables, soda-water fountain, electric piano, and cigar store, with all necessary equipment.   The excessive moisture continued, resulting in large damage to stock and equipment, and caused both defendants to suffer ill health. They were forced to move out of the premises after having occupied them about a year, and were forced to sell their fixtures and goods at a loss of some $7,000.   They continued in the premises for the year on the continued assurance of the plaintiffs that the building would dry out.   The defendants stopped paying rent when they moved out.

In January, 1923, some six months after they quit the premises, with the consent of the plaintiffs the defendants subleased the premises for the balance of the term of their lease to another party for a dance hall, and put in a maple floor for that purpose at an expense of $1,000.   The rental value per month was the same as in the original lease.   The defendants then gave the plaintiffs their promissory note for back rent in the sum of $800.   The sublessee occupied the premises five months and was obliged to move out because of the wet condition of the rooms and resulting damage.   The rent received from this party by defendants was promptly turned over to the plaintiffs.   Thereupon defendants abandoned their lease, surrendered possession of the premises to plaintiffs, and refused to pay further rent. Plaintiffs tried to lease the premises, but they remained unoccupied until March 15, 1926, when plaintiffs succeeded in leasing the premises at $55 per month for some five months, after which they were abandoned and remained vacant until the commencement of this action.

Sec. 234.17, Stats., reads as follows:

"Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the

lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender."

The statute was in force during all the time here in question. This law was passed in 1903, ch. 306, and is a verbatim copy of a New York statute, ch. 345, Laws of 1860, as found slightly modified in Laws of New York for 1896, sec. 197, ch. 547.

Sec. 234.17, Wis. Stats., being a law adopted from New York, is taken with the construction theretofore placed thereon by the New York courts. *Cobian v. Tiysic,* 181 Wis. 65, 194 N. W. 24. Before its adoption by Wisconsin the New York statute had been construed by the New York courts.

In *Vann v. Rouse,* 94 N. Y. 401 (1884), it was held that a damp and disagreeable condition created by a flow of water or drainage from adjoining premises came within the terms of the statute. In *Tallman v. Murphy,* 120 N. Y. 345, 24 N. E. 716 (1890), noxious odors and unhealthy conditions caused by smoke and gas came within the purview of the statute.

In *Meserole v. Hoyt,* 161 N. Y. 59, 55 N. E. 274 (1899), it was held that the statute relieved a tenant from payment of rent where it appeared that he had rented a house and the cellar was always wet and damp, causing rooms above to be unhealthy. On appeal to the appellate division of the supreme court (*Meserole v. Sinn,* 34 App. Div. 33, 53 N. Y. Supp. 1072) the court said:

"The appellant contends that the statute relieves the tenant only where there is a total destruction of the premises, or an injury to the premises themselves rendering them untenantable; and that as the premises here involved actually continued in the same condition, up to the time of the surrender, that they were in at the time of the lease, the cir-

cumstances do not call for the operation of the statute. We cannot agree with this contention. It fails to consider the words of the statute that the rent is to cease if the premises not only 'be destroyed,' but also if they 'be so injured by the elements, or any other cause, as to be untenantable, and unfit for occupancy.' The appellant practically contends, if the untenantability resulted from the combination of a gradual deterioration of the premises with a sudden action of the elements, the statute furnishes no defense. This contention fails to take into account the words 'any other cause,' broader terms than which could hardly be used."

Similar constructions have been given to like statutes of New Jersey and Kentucky. *Carley v. Liberty Hat Mfg. Co.* 81 N. J. L. 502, 79 Atl. 447; *Scott Bros. v. Flood's Trustee,* 124 Ky. 739, 99 S. W. 967. The plaintiffs contend that the statute is to be strictly construed as it is in derogation of the common law, but it clearly appears that the statute was intended to relieve tenants from the rigors of the common law, and we think it should be liberally construed to give it the legislative intent. On this point the New Jersey court, in *Carley v. Liberty Hat Mfg. Co., supra,* in speaking of a somewhat similar statute said:

"Nor can it be denied that the mischief which lurked within the old law, and was designed to be suppressed, was the great injustice that ofttimes happened to tenants, by being obliged to pay rent after the possibility of the beneficial enjoyment of the premises had ceased. The statute is therefore highly remedial, and its scope should be held to include a complete remedy for the recognized wrong it was intended to right."

The Kentucky court, in *Scott Bros. v. Flood's Trustee, supra,* said:

"The purpose of the statute was to change the rule of law in force before its passage. It was designed to protect the tenant from the operation of a law that imposed upon him an unreasonable burden, and it should be so interpreted as to fairly carry out the intention of its enactment."

Denham v. Madole, 194 Wis. 583.

The main contention of the plaintiffs in support of their judgment is that the defendants, by reason of subletting the premises after they knew the condition of the premises, were estopped from setting up the invalidity of the lease. The defendants answer this by saying that they in good faith tried to occupy the premises themselves, and could not, but that they thought it possible that the premises could be used for some other business, and thus they subleased, with plaintiffs' consent, in a good-faith endeavor to go through with the lease; that in doing this they made no profit for themselves and did nothing derogatory to the best interests of the plaintiffs. On the contrary, defendants claim the sublease was beneficial to the plaintiffs, and that they have no reason in good conscience to complain. The doctrine of estoppel, as applied to a question as here involved, is evolved out of the rule of honesty and fair dealing, and is such as will promote justice. It is based on the grounds of sound public policy and good faith. If the acts of the defendants misled the plaintiffs to their damage, or put them in a worse position in any way, then the court might well say that they should not be heard to deny liability because of such injurious acts.

A careful examination of the facts does not disclose any lack of good faith on the part of the defendants. Indeed, the evidence discloses without controversy that they were exceptionally patient and long suffering. The evidence is conclusive that the plaintiffs were not put in a worse position by the sublease, but, on the contrary, they were benefited. It appears that the premises were untenantable; that defendants could not occupy the same for their business, and that the sublessee could not occupy the same for his business; that when the sublessee left, the plaintiffs tried to find a tenant but were unable to do so. To induce the sublessee to occupy the premises the defendants went to an expense of $1,000 in fixing up the building, and then turned over to plaintiffs promptly every cent of rent collected from the sub-

lessee. It seems that the plaintiffs are in no position to invoke the equitable doctrine of estoppel. They have clearly received more than was equitably their due, in view of the condition of their building. It appears that the basement was at all times dangerous to health and destructive of property kept therein.

The condition of the basement, operating to vacate the lease under the statute, was a continuing one, and defendants were induced to continue the lease in reliance upon the representations of the plaintiffs that the wet condition would gradually abate. The sublease was made by consent of the plaintiffs, under the theory, or at least the hope, that the basement might be suitable for the business of the sublessee. The result was to dissipate the theory and the hope, and to then bring the defendants to a final realization that the basement was untenantable for any purpose, and they therefore abandoned the lease. Instead of being criticised for their attempt in the interest of good faith to perform under the lease, they should be commended. In no way did they put the plaintiffs in a worse position by making the sublease, but, on the contrary, they improved plaintiffs' condition materially.

The rule of equitable estoppel applicable is stated by Story:

"An equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise exist as against another person who has in good faith relied upon such conduct, and has been thereby led to change his position for the worse, and who, on his part, acquires some corresponding rights. The doctrine is founded upon equity and good conscience; and the party claiming the estoppel must have done something, paid something, or in some way changed his position for the worse, so that he will not be left, or cannot be put back, in his former condition, in case the other party is allowed to assert his original rights. Nobody ought to be estopped from averring the truth, or asserting a just demand, unless by his acts, words, or conduct or neglect, his

now averring the truth, or asserting the demand, would work some wrong to some person, who had been induced to do something by reason of what he has said or done." 3 Story, Eq. Jur. (14th ed.) p. 569.

The claim of estoppel is not available to plaintiffs under the circumstances.

The attempt to take the defense out from under the statute, by the claim that the statute is not applicable, is answered by the court in *Vann v. Rouse,* 94 N. Y. 401, in this way:

"The statute is not within the covenant, and there are no words from which it can be inferred that the parties had the law in their minds. There is certainly no agreement that the tenant shall continue liable, notwithstanding its provisions, and they cannot be made so without an express covenant. The plaintiffs' contention would, if successful, operate, so far as the tenants are concerned, as a repeal of the statute and subject them to the rigor of the common law. This claim is not sustainable."

We conclude that the trial court was in error in directing a verdict for plaintiffs. However, the defendants are liable under the lease until they surrendered possession of the premises. That is an express condition precedent of the statute. They therefore are required to pay their $800 note and any further amount that was due, if any, at the time they surrendered possession of the premises. The exact date of such surrender does not here appear, but it does appear that it was but a few days after the sublessee vacated the premises.

*By the Court.*—The judgment of the circuit court is reversed, with directions to compute the amount due the plaintiffs, as here indicated, and enter judgment in favor of the plaintiffs accordingly.