## LIABILITY FOR RENT WHERE PREMISES BECOME UNINHABITABLE THROUGH NATURAL DECAY.

Circuit Court of Cuyahoga County.

GEORGE V. MUTH v. FANNY WRUBEL.

Decided, April 1, 1899.

*Landlord and Tenant—Tenant Liable for Rent When Premises Become Uninhabitable Through Gradual Decay—Trial—Charge to Jury.*

1. Section 4113, Revised Statutes, is for the relief of ignorant and indifferent lessees who fail to protect themselves through a special provision in their lease, and does not relieve the lessee from liability for rent, where the premises become uninhabitable through gradual decay resulting from the ordinary action of natural or human agencies.

2. It is not error to charge the jury that defendant had repudiated his contract, where he had refused to perform his contract and claimed that through the operation of law the contract was no longer in effect.

*Kerruish, Chapman & Kerruish,* for plaintiff in error.
*Burton & Drake,* contra.

MARVIN, J.; CALDWELL, J., concurs; HALE, J., not sitting.

This is a proceeding in error seeking to reverse the judgment of the court below in an action wherein Fannie Wrubel brought suit against George V. Muth to recover for the breach of a contract which she says was originally entered into between herself and a man by the name of Acnovitch.

Fannie Wrubel was the owner of certain property on Lorain street in the city of Cleveland. She entered into a written contract of lease with Acnovitch, by which he was to have the property for the period of five years, beginning on the 1st of September, 1891. The lease had the ordinary clauses and terms and in addition it had a clause that all repairs upon the property should be made by the lessee. The rent was four hundred and eighty dollars per year, to be paid the first day of every month—forty dollars per month.

The lease was acknowledged by Fannie Wrubel before a proper officer. On the back of that lease Muth made this endorsement:

"I hereby guarantee the payment of the rent within stipulated, for the entire time of the lease and further guarantee the performance on the part of the lessee, his heirs and assigns, of all the conditions herein expressed.

"But it is expressly understood that if the said Abe Acnovitch fails or should violate the obligation of this lease or if the said lessee, Acnovitch, fails to sell other beer than the goods produced by Geo. V. Muth, as long as the same is marketable, then this lease shall be null and void and the said Geo. V. Muth shall have full control of the same, otherwise it shall be in full force."

This case was in this court once before and it was then said and agreed, and is now, that the words here used in this endorsement do not express what was intended by the parties. The evidence shows that Muth was operating a brewery; that the place leased was a place where brewers' goods were sold, and that what Muth meant to provide here was, that if Acnovitch failed to sell the goods manufactured by Muth the lease would be null and void, and Muth could become the lessee. So that this endorsement is to be treated as though it expressed an agreement that if Acnovitch forfeited his rights, then Muth became lessee; and when Acnovitch failed to sell goods manufactured by Muth and whenever he failed to perform the conditions on his part to be performed, he, as lessee, would lose his rights under the lease.

The petition sets forth that Acnovitch, having occupied the premises for a time, gave up the possession to Muth and Muth took possession and kept possession for a time, and then repudiated the contract. Then Wruble sought to recover damages by reason of such repudiation, and recovery was had in the action. The defense was that Muth was justified in refusing to go on under the lease, by reason of the fact that the premises were utterly unfit for occupancy or use; that at the time notice was served, to-wit, on the 29th day of October, 1892, this house was then in an utterly ruinous, dilapidated and uninhabitable condition; that it was entirely unfit for any person to live in; that the sides had bulged out; that it had sagged down in places

and was in a falling condition, and was not only unfit to live in, but it was dangerous for any person to remain in it; that a hole beneath it, which many years before was a cellar, had been filled with ashes; that there was no sewerage; that the house had sunk down upon one side; that the floors were rotten and utterly worthless, with great holes through them, and that the partition had fallen down inside, and that it was in a rotten and utterly worthless condition, and in such a condition that the only advisable thing to do with it was to tear it down or to set fire to it; that it was incapable of repairing.

He sets up further that he gave notice to Wruble that he abandoned the premises because of this condition of the property, and delivered up the possession and gave the key to her, and that she accepted the possession.

On the trial of the action it was sought on the part of the defendant to prove that these premises were uninhabitable and unfit for occupancy, not by reason of any destruction of the elements, by fire or hurricane or the like, but, as set out in the answer, that they became uninhabitable.

Relief is sought by reason of Section 4113 of the Revised Statutes, which reads:

"The lessee of any building which, without any fault or neglect on his part, is destroyed or so injured by the elements, or other cause, as to be unfit for occupancy, shall not be liable for the payment of rent to the lessor or owner thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant; and the lessee shall thereupon surrender possession of the premises so leased."

In the case of *Hilliard* v. *The New York & Cleveland Gas Coal Co.*, 41 O. S., 662, this statute was construed, and on page 669 the court uses this language:

"The evident design of the act was to relieve the ignorant and indifferent who might fail to protect themselves by special provision in their lease, against the evil and mischief of the common law, which held the tenant liable for rent although the demised premises were destroyed by fire, flood, tempest or otherwise, unless he was exempt from liability by some express covenant in his lease.

"The destruction or injury, within the purview of the statute, is not that gradual decay which results from the ordinary action of the elements nor injury resulting from the ordinary action of human agencies, which a lessee is supposed to have in view when he enters into his contract. The statute is designed rather to protect the lessee against an unexpected and unusual action of the elements or of human forces, causing a total destruction of the demised premises or an injury thereto only short of a total destruction, which the parties ignorantly or inadvertently failed to anticipate and provide against when the demise was made."

And the court then quotes from a decision in the state of New York under a similar statute, *Suydam* v. *Jackson*, 54 N. Y., 450.

The defendant below attempted to show, not that there had been a destruction by the elements, but that by reason of faulty construction and the ravages of time the building had become uninhabitable and unfit for occupancy. Clearly that was not, in the language of the Supreme Court, an "unexpected and unusual action of the elements or of human forces."

A large part of the objections to the admission of evidence on the part of the defendant below is disposed of by this construction of the statute. Quite a number of witnesses were offered on the part of the defendant below, to show how badly decayed this property was because of the ravages of time, and, perhaps, of mis-use by prior tenants.

This the court refused, and properly refused, unless we misconstrue the statute.

It was proposed to introduce in evidence a certain notice that was not properly identified. As we understand the statute that would not have availed him. Acnovitch occupied this property some time after the lease was made; he thereafter left the occupancy of it, and others went into the occupancy; rent money was paid to Mrs. Wrubel by Muth during the occupancy of other tenants, or part of the time; Muth says he got this money from other tenants and paid it over to her. Mrs. Wrubel testifies that she had a conversation with Muth after Acnovitch had left. This is what she says:

"I went to Mr. Muth and I told him Acnovitch sold out the place to Mr. Rock, and he said 'No, I am the lease-holder, and

I keep this place; I take possession of the place. You are satisfied, Mrs. Wrubel?' 'Yes, when I would not be satisfied, I would take Gehring or Sclather' He says 'You will find out what kind of a tenant I am. You will never have your place in such a condition as it is now. You don't need to come after the rent every month. You get your rent.' And Mr. Muth done so for twelve months, a whole year.''

Mrs. Wrubel is nowhere contradicted as to what she said that Mr. Muth said to her. Muth did not deny that he told Mrs. Wrubel, the owner of the premises, that he had become the lessee of the premises.

It is urged on the part of the defendant, that this endorsement was made long after the lease and that it was made without any consideration. As we look at the case it is indifferent whether it was made at the time of the execution of the lease or later.

One other thing is said on the part of the defendant below, that is, that this lease was not acknowledged by any one. Really, the statute does not require any one to acknowledge a lease. The lessee does not acknowledge it. The statute expressly provides that it must be acknowledged before an officer, where the lease is for a given period of time. But there is a condition expressed in this endorsement of guarantee, a consideration, to-wit, that the beer manufactured by Muth shall be the only beer sold in this place of business. Muth was given that consideration, the selling of his beer; but he told Mrs. Wrubel, so she testifies, when he took possession, that he was the lessee; he paid the rent to her thereafter, and nobody denies it. So we think the date of the endorsement is a matter of indifference.

It is complained that the court erred in its charge to the jury, to the prejudice of the plaintiff in error, in that he said to the jury that there was an acknowledgment on the part of Muth that he received a consideration. The court did not mean to say, or at least we would not be justified in understanding the court to use the word "consideration." But Muth, not only by his endoresement, but by his testimony upon the stand, shows that he made that endorsement; that he made it that he might be insured that his beer should be sold at this place of business, and the court meant that that acknowledgment of that fact showed

his consideration.  We think the court was right about it.

It is urged that the court erred in charging as follows:

"It is alleged that on or about October 29th, 1892, the defend-and repudiated this contract and denied any and all liability thereon, and refused to perform the terms and conditions of the same.  And this is admitted by the defendant."

This is excepted to.  It is said that he did not admit all that; that he did not repudiate the contract.  It is urged on the part of the plaintiff in error, that he said, "By reason of the laws of Ohio, there is no longer a contract between us, which I am bound to perform."  But he says he refused to be bound by the contract; that he insisted he was no longer bound by the contract —and that that makes all there is of this charge.  There is no error to his prejudice in that.

The court, in its charge, further says, and it is complained of:

"The measure of damages is the difference between what was agreed to be paid per month for these premises, which was guaranteed by the defendant, and the amount which the plaintiff received from the premises after the breach of October 29th, 1892.  When the breach occurred, when the defendant repudiated any further liability under this agreement, then it was the duty of the plaintiff and she had a right to rent the premises and to see that it was kept remunerative, and to reduce—as far as the reasonable exercise of prudence on her part would—the damages which would flow by reason of his breach of the contract.  She says she did that, by renting the property."

It is said that the court states that the defendant had repudiated the contract.  The court was justified in saying this by the defendant's own testimony; by his own showing he says he repudiated it.  He did not claim that he was any longer bound by it; he claimed it was no longer habitable; he did not claim it was injured by the elements or injured in any other way than might naturally and properly be expected by the ravages of time, and it had probably become unfit for use for those very reasons.

The plaintiff below, as a matter of fact, did lease the premises and get what rent she could out of it, and, before terminating the lease of the grantee, she sold the property, and the court limited her recovery of damages resulting from the repudiation of the

contract to the time prior to and ending with the time she sold the property, and also reduced the amount by the difference she had been able to get out of the property after the discontinuance on the part of Mr. Muth to pay any rent.

We think the charge was clearly the law, and that the ruling on evidence was the proper ruling.

There was an agreement as to what should be paid. Unless the defendant was justified in giving up this property, then that agreed price between them was a matter to be taken into consideration in determining the damages. That, the court instructed the jury, should be done.

We think the judgment was right and there was no error in the proceedings.